## ROSEWATER v. GLEN TELEPHONE CO.

(Supreme Court, Appellate Division, Third Department. March 11, 1903.)

1. CORPORATIONS—OFFICERS—AUTHORITY.
    Where a city ordinance required a telephone company to place its wires in a subway belonging to another company, which course would be a benefit to the latter company, and the telephone company sought to restrain the enforcement of the ordinance on the ground that the subway was not properly constructed for such purpose. the president of the company owning the subway, in securing the services of an expert to make an affidavit for use in the litigation, showing the subway a proper one, was acting within the line of his duties.

2. EXPERTS—AFFIDAVITS ON INJUNCTION—UTILITY.
    A telephone company, having been required by ordinance to place its wires in a subway belonging to another company, sought to restrain the enforcement of the ordinance on the ground that the subway was not properly constructed. The company owning the subway made a statement as to the construction thereof to an electrical expert, requesting his affidavit in their behalf, if he felt he could be of service to them. His affidavit treated the subject in detail. and enumerated the conclusions as to subway construction of an electrical commission appointed by the President of the United States, of which commission he was president, and he deposed that the subway afforded proper facilities, and such as afforded by subway systems in several large cities. *Held*, in an action by him for his services, that his affidavit was not a mere academic opinion on subway construction, but that he had performed the services for which he was employed.

3. SAME—QUESTION OF FACT.
    In an action by the expert for his services for furnishing an affidavit, his determination that he could be of service was not conclusive as against defendant, but whether his affidavit had been serviceable was a question of fact.

Appeal from Trial Term, Fulton county.

Action by Andrew Rosewater against the Glen Telephone Company. From a judgment in favor of the plaintiff, and from an order denying the defendant's motion for a new trial made upon the minutes, it appeals. Affirmed.

Argued before PARKER, P. J., and SMITH, CHASE, CHESTER, and LYON, JJ.

Fred Linus Carrol, for appellant.
Jeremiah Wood, for respondent.

CHASE, J. This action is brought to recover for services as an expert in making an affidavit for use in an action entitled "The Hudson River Telephone Company against the City of Johnstown." Defendant is the owner of certain subways under the streets of said city into which said Hudson River Telephone Company had been directed by a city ordinance to place its wires and cables. The action of the Hudson River Telephone Company was brought to obtain an injunction restraining the city from enforcing said ordinance. The grounds alleged in its complaint for said injunction were that said subways "are composed of materials defective in quality and improper for such use or purpose; that the work of construction has been performed in an unworkmanlike manner, and the ducts therein, and the materials connected therewith are inadequate and insufficient for the purpose described in said ordinances, etc.; and that by reason of the inferior quality of the material so used, and the improper method of construction employed, all electrical currents passing through any wires that may be contained therein are liable to be brought in contact with the surrounding earth, and thereby rendered useless for the service for which said currents are generated and conducted through said wires;" and that the placing of high and low tension wires in said subways so constructed would result in a transference of electrical energy from one to the other, which would seriously damage and render useless the plaintiff's telephone system.

The answer of the city alleges that the conduits, subways, manholes, etc., are properly constructed, and adequate, suitable, and proper in all respects for the uses and purposes to which it is intended to put the same, and denies all of the plaintiff's allegations as to the improper and faulty construction of said subway system, manholes, etc., and as to the damage which the plaintiff claims would be occasioned to it. Among other efforts to obtain affidavits for the purpose mentioned, the defendant's president wrote a letter in defendant's name to the plaintiff, dated the 27th day of December, 1900, in which he says:

"We are writing you at the suggestion of Mr. Barnard of the American Vitrified Conduit Company and if you can be of service to us which you can determine after reading the enclosed papers we will be pleased to have you frame such affidavit as you may decide upon and we will gladly settle your bill for same."

In this letter he stated that the affidavits were for use in two suits pending. He also stated in his letter:

"Our subway is intended for use of high and low tension wires, our intention being to carry the high tension wires around on the opposite sides of the manholes used for the low tension wires. The copy of the affidavit made by Mr. Donaldson is sent to you as a guide to what we want and refutes the objections they make to going into our subway. They assert our subway is imperfectly constructed, as manholes are too small. The ducts are rough inside, and liable to injure the cables, and that on Market street we did not use concrete and therefore it is not proper construction," etc.

In said affidavit of Donaldson it is stated:

"That the manholes and subsidiaries described in said affidavit are amply sufficient in size and structure for the purpose of installing and working therein said cable system; and that the smallest of said manholes is amply large to enable workmen efficiently to splice cables or to do any other work which might be required to be done therein."

In said affidavit it is further stated:

"Deponent further says that high and low tension wires consisting of electric light and power wires on the one hand and telephone and telegraph wires on the other (or in other cases consisting of wires carrying a current of over 550 volts on the one hand and wires carrying currents of less than 550 volts on the other hand) can be safely, properly, and satisfactorily installed and operated in the same subway in separate ducts and using the same manholes."

In said letter, defendant's president inclosed a copy of his affidavit to be used in said action, in which he says:

"That on each side of West Main street for two blocks between Perry and William streets sixteen ducts were laid; with manholes at the intersection of each street, not over 450 feet apart, having openings of three feet at covers. On every other property line a subsidiary or small manhole was placed and the upper two tiers of eight ducts were carried into these and the two under tiers of eight ducts were run from manhole to manhole."

Said affidavit also states:

"All the manholes had cast-iron frames and covers weighing about 2,000 pounds; and the subsidiaries had cast-iron frames and covers of proportionate weight. That there are about 35 manholes properly located ranging in size from 6 feet 8 inches deep by 5 feet square to not less than 5 feet deep by 3½ feet diameter. And about 40 subsidiaries or small manholes properly located ranging in size from 3 feet 8 inches deep by 3 feet in diameter to not less than 2 feet 6 inches deep to 2 feet 6 inches diameter. The variation in size being necessary and unavoidable by reason of the service pipes and other obstructions encountered in building them in the streets of said city."

The president of the defendant in this action was and is its chief executive officer. He had charge of the construction of the subways. The defendant was directly interested in compelling the Hudson River Telephone Company to use its subways, and its interest in the action so brought by the Hudson River Telephone Company against the city of Johnstown was in charge of and being guarded by its president as its chief executive officer. There seems to have been a motion for a preliminary injunction in that action. The president of the defendant in this case in its name obtained numerous affidavits for use by the defendant in that action. The defendant paid the bills so incurred by its president in every case, except the bill of the plaintiff. The defendant's attorney gave directions in regard to the affidavits so prepared and to be prepared by the defendant for use in that action. Under the circumstances disclosed in this case, the jury properly found that its president, in writing said letter, was acting directly in the interest of the defendant, and within the line of his duties as its executive officer. The defendant should also be deemed by its acts to have ratified and approved his efforts in its behalf in sustaining the construction, safety, and practicability of the subways so owned by it.

There was no correspondence between the plaintiff and defendant

after the letter of December 27th, until plaintiff wrote to the defendant on the 7th day of January, inclosing his affidavit, in which letter he says:

"In compliance with your letter of December 27th, I have given careful consideration to the affidavits submitted to me, and have prepared the enclosed copies, which I trust will be satisfactory."

With this letter inclosing the affidavit was a bill of $500 for services in preparing the affidavit.

The important question in this case is whether the plaintiff performed the services for which he was employed by the letter of December 27th. If the defendant's president had authority to write such letter, and the plaintiff performed the services for which he was so employed, there remains only the question as to the amount to be paid therefor.

On the 16th day of January, nine days after the plaintiff sent his affidavit to the defendant, the defendant by its president wrote the plaintiff:

"We herewith return you affidavit, which is unsatisfactory and of no value to us. The charge for same as stated in your memorandum is exhorbitant, and we decline to accept same or acknowledge any liability therefor."

Some other correspondence followed, but plaintiff's charge for services was not paid, and this action was commenced.

The affidavit of the plaintiff is lengthy, and treats the subject presented to him with much detail. It is such an affidavit as ought reasonably to be expected from a man of plaintiff's experience and ability in response to the defendant's letter. In our judgment, it sustains the defendant's contention in the litigation between the Hudson River Telephone Company and the city of Johnstown in every particular. The only doubt in regard thereto relates to plaintiff's statement in regard to the construction and use of manholes. There are but two references in plaintiff's affidavit to the manholes. Plaintiff was the president of a board appointed by the President of the United States known as "The Electrical Commission of the District of Columbia," and in his affidavit he says: "The conclusions of the board relative to the disposal of wires and construction of subways were as follows." He then enumerates the conclusions of said board, among which is the following:

"(4) Conductors carrying high potential currents may be placed close to telephone or telegraph wires without interfering by induction. To prevent accident it is well to place the high and low potential conductors in different ducts and also to use separate manholes or compartments of manholes."

Subsequently in the affidavit the plaintiff states that he has found no occasion to change his views from the conclusions so submitted to the president in 1891. The more important statement in the plaintiff's affidavit relates to the particular case under consideration, and is as follows:

"Deponent further believes that the subsidiary manholes and large manholes described in the affidavit of J. S. G. Edwards afford ample facilities for all cables that may be placed within the ducts of the Glen Telephone Company's subway. With respect to the use of same subway system for high and low tension wires deponent has reason to believe that such use is

perfectly practicable, as intimated in the report of the Washington Board in 1891. This is evidenced by the fact that high and low tension wires are now being used in separate ducts of the same subway system in New York, Chicago, and other cities, care being taken to place them on opposite sides of such subways so that in entering manholes they can be conveniently handled apart from one another. Deponent considers however that if by any accident high tension currents should be induced into the lead sheathing surrounding low tension wires such as telephone wires, less damage would result in such event than where overhead wires cross each other under like circumstances."

In his affidavit he also states:

"Deponent has carefully read the affidavit of J. S. G. Edwards under date of December 27, 1900, descriptive of the construction of the conduit and subway of the Glen Telephone Company in the city of Johnstown, N. Y., and from said description he is prepared to say that the arrangement and construction of said subway conduits and ducts is substantially the same as is generally in operation and use in different cities of the country, the form varying in different localities as to shape of ducts, some being rectangular, and others round, but each, where constructed in the manner therein designated, are suitable to the wants of the service."

The trial justice, in presenting this case to the jury, stated as a matter of law that the plaintiff had performed the service for which he was employed. This he did in the following language:

"You see from this that it was left to the plaintiff to say whether or not his services would be of avail to the defendant. They were sending to this man as an expert, as a man skilled in a particular scientific matter; they sent data from which he was to glean such information as they thought he might need; and it was left to him to determine whether or no his knowledge in regard to that matter would be of use to them. If he did so decide he was to forward the results of his knowledge, experience, and skill in these matters to them, and that was the end of that matter. * * * By the very terms of employment it was left to him to determine whether he could be of use to them, and, he having determined that he could be of use to them, that ended the matter."

The appellant contends that the defendant did not send to the plaintiff for a theoretical or academic opinion on the subject of subway construction, but that it was looking for proof upon which the court would be justified in denying the preliminary injunction sought in the action against the city in favor of the Hudson River Telephone Company. We agree with the appellant that there should be some limit to the right of the plaintiff to determine as to whether he should or should not make an affidavit. We are of the opinion, however, that the plaintiff's determination that he could be of service to the defendant was made in good faith and upon reasonable grounds therefor, and that the trial justice was right in holding as a matter of law that the plaintiff had performed the services for which he was employed. The defendant's refusal to accept the plaintiff's affidavit seems to have been caused by its desire to avoid the payment of an unexpectedly large bill, rather than by reason of anything in the affidavit itself that can reasonably be claimed to show that plaintiff did not comply with the terms of his employment.

The judgment should be affirmed, with costs. All concur.