[Civil No. 2130.   Filed April 12, 1924.]

[224 Pac. 822.]

## TOM REED GOLD MINES COMPANY, a Corporation, Appellant, v. ERNEST B. MORRISON, Appellee.

1. MASTER AND SERVANT — EMPLOYEE'S NEGLIGENCE IN OPERATING SAW HELD FOR JURY.—Whether plaintiff's injury was caused by his negligently operating a left-hand saw with his right hand, thereby choosing the less safe method of operating it, *held* a question for jury.

2. MASTER AND SERVANT — WHETHER EMPLOYEE WAS INSTRUCTED AS TO OPERATION OF SAW HELD FOR JURY.—In action for personal injury alleged by defendant to have been caused by plaintiff's negligent use of a left-hand saw with his right hand, whether plaintiff was instructed as to its proper operation *held* a question for jury.

————

1. Liability of master for injuries to servant by defective machinery, see notes in 77 **Am. Dec.** 218, 34 **Am. Rep.** 621; 98 **Am. St. Rep.** 289. See, also, 18 **R. C. L.** 560.

1. Liability of master for injuries to servant by saw operated by machinery, see note in **Ann. Cas.** 1913C, 125.

2. See 18 **R. C. L.** 565.

3. MASTER AND SERVANT — SELECTION OF MORE DANGEROUS METHOD NOT NEGLIGENCE AS MATTER OF LAW.—The fact that one selects voluntarily the more dangerous of two ways of doing a thing does not of itself as a matter of law constitute negligence.

4. NEGLIGENCE—QUESTION OF LAW. — Negligence, or its absence, becomes a question of law only when the questions of fact relied on to constitute it are undisputed, or, not being in conflict, are such that rational minds may not draw different conclusions therefrom.

5. MASTER AND SERVANT—EVIDENCE HELD TO SHOW INJURY NOT DUE TO EMPLOYEE'S NEGLIGENCE IN OPERATING SAW. — In action for personal injury alleged by defendant to have been caused by plaintiff's operation of a left-hand saw with his right hand, *held* that plaintiff sustained his burden of showing that his injury was not due to his negligence.

6. MASTER AND SERVANT — INJURY SHOWN TO BE DUE TO CONDITION OF EMPLOYMENT.—In action for personal injury, alleged by defendant to have been caused by plaintiff's operation of a left-hand saw with his right hand, evidence *held* not to lead to the conclusion that such operation by plaintiff caused his injury but to justify jury's finding that it was due to a condition of the employment.

7. TRIAL—POINTING OUT TO JURY, DURING EXAMINATION, THAT DEFENDANT CARRIED INDEMNITY INSURANCE, HELD REVERSIBLE ERROR.—In personal injury action, pointing out to jurors, during examination, that defendant carried indemnity insurance against loss from accidents to its employees, *held* improper, and to constitute reversible error.

APPEAL from a judgment of the Superior Court of the County of Mohave. E. E. Bollinger, Judge. Judgment reversed and remanded.

3. Nonliability for negligence in using instrumentalities in a manner not contemplated nor authorized by the master, note, 54 L. R. A. 123. See, also, 18 R. C. L. 573, 659.

4. See 20 R. C. L. 166.

5. Pleading and evidence in action by servant against master for injuries by saw operated by machinery, note, Ann. Cas. 1913C, 138. See, also, 18 R. C. L. 663.

7. See 16 R. C. L. 276.

See 26 Cyc. 1259, 1442, 1456, 1473, 1482; 29 Cyc. 629; 38 Cyc. 1498.

Mr. C. W. Herndon and Mr. Louis L. Wallace. and Mr. John Dickinson, for Appellant.

Mr. S. D. Stewart, for Appellee.

McALISTER, C. J.—The plaintiff, Ernest B. Morrison, brought an action under the Employers' Liability Law (Civ. Code 1913, pars. 3153–3162) against the Tom Reed Gold Mines Company to recover damages for personal injuries. From a judgment in his favor for the sum of $15,000, entered upon the verdict of a jury, and a denial of its motion for a new trial, defendant appeals.

At the time of the injury Morrison was operating what is known as a left-hand, cut-off saw which swung to and from the timber to be cut, and ran by electric power. It was suspended in a frame to which was fastened a handle and a weight; with the former it was pulled against the timber, and with the latter it was drawn back automatically after it had completed the cut and was released by the operator. In front of and close to it was a long platform or bench with a shallow groove through which the saw passed and rollers upon which the timber rested and was drawn forward for cutting. Attached to the back of this bench and to the right of the person facing the saw was a six or eight inch board to prevent the timber from falling, and between the saw and the handle was to guard about halfway down the former to prevent the hand, arm and body of the operator from coming in contact with it. When the cut was finished, the handle was released, the saw drawn back automatically by the weights, the block cut off removed, and the timber drawn forward to be cut again. If the operator grasped the handle with his left hand, his body was to the right of the saw and the shield or guard, and the danger of injury was small; but if he puled it with his right hand his position was naturally in front of the saw, where his body, hand and

arm would be in more danger from the saw, as it was drawn against the timber and toward him, than if standing where the use of his left hand would place him.

When the accident occurred, Morrison was cutting wedge blocks about one foot in length out of left-over pieces of timber, not themselves very long. He had pulled the saw with his right hand, made the cut, and reached with his left to remove the block cut off when his arm and fingers in some way came in contact with the saw and were injured. He testifies:

"As I sawed a block off I caught hold of it like that, and the saw caught the block and caught me both, and hit me there on the arm, and I got out. I don't remember how it hit my finger. I know it hit me on the arm first."

And on cross-examination, when asked where his left hand was at the time, he replied:

"It would be about like that until I cut this block off. As I reached over to get that block the saw simply wobbled, and it just cut that block instantly and jerked me right into the saw, and I jerked out, and I don't know how it happened to hit my fingers. I didn't notice. I got out of there best I could."

E. E. Jefferson, a witness for plaintiff, after stating it was a left-hand saw, said, in reply to the question:

"In other words, you would pull it with your left hand?"

"Have to pull it with left hand, or I am in danger with these pieces. I am very much in danger of it."

W. B. Phelps, a witness for the defendant, testified that the guard on the right side of the saw was to protect the operator, and as long as he grasped the handle with his left hand, his right being on the timber, the saw would swing clear of him on his left. This was considered the safe way to operate it, while to pull it with his right hand was dangerous.

"We always instruct our way (men?) to pull the saw with the left hand."

Morrison's fingers were slightly cut by this saw five or six days previous to the accident while he was operating it with his right hand, and the superintendent of the company testifies that he told him at that time to use his left hand.

Appellant contends that the evidence does not support the judgment because it conclusively appears from the foregoing facts that the injury was caused by appellee's own negligence in operating a left-hand saw with his right hand, and that it would not have occurred had he been using his left hand as a reasonably prudent man would. It is perhaps true that it is more dangerous ordinarily to operate this saw with the right than with the left hand, but this fact alone does not place one injured while so handling it beyond the benefits of the law. To have this effect it must appear that the operator's injury was caused by such handling, and the facts in this case are not such as to lead necessarily to this conclusion. It might have been negligence to have pulled the saw with the right hand instead of the left, but, unless the evidence shows that his injury was caused thereby, it should not defeat his action, and for aught that appears he would have been injured even if he had pulled the saw with his left hand. He was not hurt while handling the saw, but after he had made the cut, released the saw, and was removing the block he had just cut. Whether he operated it with his right or with his left hand, he naturally removed the block cut off with the latter, and in order to do this when he was also directing the saw with that hand it was necessary for him to release the handle and reach past and to the left of the saw, the lower half of which was unprotected by the shield or housing. If the saw did not fall back promptly when released, but wobbled and struck, the likelihood of injury to the arm and hand

as it quickly reached past the saw for the block would appear to be just as great, if not more so, than if it had been extended to the unprotected side of the saw from where one operating the handle with the right hand would naturally stand. To the danger of having his arm jerked into the saw when extended from this position to grasp the block would be the added peril of reaching in front of and close to the saw. However, there was little danger, if the saw fell back and clear of the platform promptly after it was released, but for some cause, according to the testimony of appellee, the only witness to the accident, it failed for the first time to go backward as quickly as it should after making a cut. In his cross-examination this appears:

"Q. Had you had any previous trouble about this saw not falling back when you got through cutting? A. No, sir; I never had.

"Q. This is the first time it had not fallen back? A. Yes, sir."

Just why it failed is not clearly disclosed. However, according to appellee's statement, the saw was cracked and lacking one entire tooth and one-half of another, and the weight which drew it back after each cut had not been working well on account of the sawdust and particles of wood under it. This material was there then and had been accumulating for quite awhile, though appellee did not notice how much there was at the exact time of the accident. He said concerning it and the weight:

"Well, this weight setting up there as I have told you, was about ten or eight inches high, with a hole in the top of it, and this rope being in that position, this sawdust, as it would accumulate there, would naturally cause this weight not to go down, not to release the saw as it should, for the reason, if this weight should happen to stand on end and not lay down."

Appellee was a novice in the use of this machine. He testifies that he had been operating it part of the time for only about three weeks, and that he used his right hand when cutting small pieces, such as wedge block, and his left when cutting larger timber, such as cribbing, because "the way the cribbing was going through there a man would naturally use his left hand in that position." He testifies further that he had never received any instructions as to how to handle it, but that some time previous to the accident he had seen and helped another employee, George Heldman, use it, and that he pulled it sometimes with his right and sometimes with his left hand. This, it appears from appellee's statement, was the only source of information he had as to the method of its use. He denies that the superintendent told him six days before this to use his left hand, hence it was for the jury to say whether he had been instructed how to operate it as required by paragraph 3157, Revised Statutes of Arizona, 1913, reading as follows:

"Every employer, whether individual, firm, association, company or corporation, employing workmen in such occupation, of itself or through an agent, shall by rules, regulations or instructions, inform all employees in such occupations as to the duties and restrictions of their employment, to the end of protecting the safety of employees in such employment."

Under these facts no one, it seems to us, can say that appellee's arm and hand would not have been injured had he been at the time operating the saw with the left hand, and, such being the case, it does not follow, as a matter of law, that his injury was due to his own negligence in selecting the more dangerous of two ways of operating the saw. While it may be true that one handling it with his right hand would be ordinarily in a less safe position than one operating it with his left, yet in view of the foregoing facts it does not appear that to operate it with the former is

obviously so much more hazardous "that no person of ordinary prudence" would adopt it. The mere fact that one selects voluntarily the more dangerous of two ways of doing a thing does not of itself as a matter of law constitute negligence. "It is still a question for the jury," says the court in *Lewis* v. *Texas & P. Ry. Co.*, 57 Tex. Civ. App. 585, 122 S. W. 605, "unless the facts proved show the selection of a method obviously more hazardous and under circumstances such as would justify the court in concluding as a matter of law that no person of ordinary prudence would have adopted it." *Bailey* v. *Prime Western Spelter Co.*, 83 Kan. 230, 109 Pac. 791; *Headrick* v. *H. D. Williams Cooperage Co.*, 97 Ark. 553, 134 S. W. 957. Whether, therefore, the injury was due to appellee's negligence in choosing the less safe method of operating the saw or to a condition of his employment was a matter falling peculiarly within the province of the jury to decide. Negligence, or its absence, under *Calumet & Arizona Mining Co.* v. *Gardner*, 21 Ariz. 206, 187 Pac. 563, becomes a question of law only when the questions of fact relied upon to constitute it are undisputed, or, not being in conflict, are such that rational minds may not draw different conclusions therefrom.

Neither can it be said, in view of appellee's version of the accident, that he has not sustained the burden of showing that his injury was not due to his own negligence. In the case of *Southwest Cotton Co.* v. *Ryan*, 22 Ariz. 520, 199 Pac. 124, cited by appellant to substantiate the contention that he has failed to do so, there was no proof whatever, either offered or received, in support of the allegation that Ryan's injury was not due to his own negligence, or, as it was stated in the complaint, of the affirmative allegation that he was at the time in the exercise of due care. This allegation was denied, and this court held that the admission of the employment, its hazardous

character, and the allegation that the injuries were suffered while plaintiff was working on a planer or jointing machine in a planing-mill by his right hand's being caught in the jointer, severing part of the thumb and forefinger thereof, did not admit that the accident causing the injury arose out of and was due to a condition of employment, and in consequence of this alleged admission that the plaintiff was at the time in the exercise of due care. There were no facts admitted or proven from which the jury could say which caused the injury—the negligence of the plaintiff or the condition of the employment. In the case at bar, however, the full facts are in evidence, and they do not lead necessarily to the conclusion that the operation of the saw with his right hand was the cause of appellee's injury, but, upon the other hand, notwithstanding this method of handling it, are such, if appellee's version of the accident be accepted, that the jury was justified in finding that it was due to a condition of the employment.

While the jury was being examined as to their qualifications, appellee's counsel questioned several of them regarding casualty or indemnity insurance which, he pointed out, was carried by appellant to protect it against losses resulting from accidents to its employees. When asked if he ever handled insurance, Juror Gaddis stated that he had been in the life insurance business, and counsel thereupon made this explanation:

"Well, this is a mining case and the company is furnished with what they call casualty or indemnity insurance in favor of a man when a man is hurt."

And in the examination of Juror Ware, who said that his company handled insurance, the following occurred:

"Q. Does the insurance companies which you represent write casualty insurance and indemnity in-

26 Ariz.—19

surance for mining companies to protect the workmen engaged in hazardous occupations? A. They do.

"Q. You understand what that form of insurance covers then, do you? A. In a sense, I do. We have nothing to do with the adjustment of cases.

"Q. And in the event a person is injured in that hazardous occupation and if the insurance company takes care of it, the employer or mining company is not—

"Mr. Herndon: I do not believe that is a proper question.

"Mr. Stewart: I will withdraw it.

"Q. Have you ever at any time carried any insurance of that sort, indemnity or casualty insurance on behalf of workmen for the Tom Reed Gold Mines Company? (Objection to this overruled and question repeated.) A. I am not sure, Mr. Stewart, whether we have ever written them, but I have in mind six or seven years ago we did have such insurance.

"Q. At the present time are you very positive and sure that you do not represent in any way the Southern Casualty Company who I am informed carries such insurance with the Tom Reed?"

It is very plain that this inquiry went further than was necessary, and that its purpose was, not merely to obtain information to guide counsel in selecting the jury, but rather to inform and impress upon the jurors the fact that the defendant was insured against loss from accidents to its employees. It is true that parties to any cause tried by a jury have the right to make such inquiries of those being examined as will enable them to select twelve fair and impartial men to decide the case, but this privilege does not permit them, under the guise of legitimate examination, to direct the attention of the jury to matters wholly irrelevant and which can serve no purpose other than to prejudice the defendant. *Faber* v. *Reiss Coal Co.*, 124 Wis. 554, 102 N. W. 1049. The fact that the defendant carried casualty insurance as a protection from loss in case of accident is a matter in which

neither the jury nor the plaintiff had any concern whatever. The defendant's liability in no sense depended upon it, and the injurious effect knowledge of it by the jury was likely to have is so apparent that it is unnecessary to discuss it. In the case of *Blue Bar Taxicab & Transfer Co.* v. *Hudspeth,* 25 Ariz. 287, 216 Pac. 246, this court held in the following language that bringing such information to the attention of the jury was sufficient to require a new trial:

"The effect of these questions, together with the answer of the first question, made the fact known, and impressed upon the jury, that back of defendant's liability stood some sort of insurance. This information was not wholly inadvertent, so far as plaintiff was concerned, nor was it a necessary incident of any legitimate evidence. No instruction was given to the jury to cure the effect of it. The consequence of such information is well known, and is sufficient to require a new trial. It is useless for counsel to talk of the innocuous character of this evidence, when they at the same time, in order to get the information before the jury, are willing to imperil any verdict which might be rendered. All lawyers know the rule in regard to such evidence, and they must not expect the court to establish a rule, and then wink at its violation."

To the same effect are the following: *Houston Car Wheel & Machine Co.* v. *Smith* (Tex. Civ. App.), 160 S. W. 435; *Arnold* v. *California Portland Cement Co.,* 41 Cal. App. 420, 183 Pac. 171; *Mithen* v. *Jeffery,* 259 Ill. 372, 102 N. E. 778; *Iverson* v *McDonnell,* 36 Wash. 73, 78 Pac. 202; *Trent* v. *Lechtman Printing Co.,* 141 Mo. App. 437, 126 S. W. 238; *Manigold* v. *Black River Traction Co.,* 81 App. Div. 281, 80 N. Y. Supp. 861; *Putnam* v. *Pacific Monthly Co.,* 68 Or. 36, 45 L. R. A. (N. S.) 338, L. R. A. 1915F, 782, Ann. Cas. 1915C, 256, 130 Pac. 986, 136 Pac. 835.

We will not discuss the assignment based upon the excessiveness of the verdict, for the reason that this complaint, if well founded, will probably not exist

when a trial is had in which no reference is made to matters tending to prejudice the jury against the defendant.

The judgment is reversed, and the case remanded, with directions that a new trial be granted.

ROSS, J., concurs.

LYMAN, J., concurs in the result.