[Civil No. 2121.   Filed June 6, 1924.]

[226 Pac. 542.]

GAZETTE PRINTING & PUBLISHING COM-
PANY, a Corporation, Also Known as GAZETTE
PRINTING COMPANY, Appellant, v. SAMUEL
SUITS, Appellee.

(Rehearing granted. For opinion on rehearing,
see 2 Ariz. ——, 233 Pac. 595.)

1. MASTER AND SERVANT — UNDER EMPLOYERS' LIABILITY LAW, EM-
PLOYEE MUST SHOW PROXIMATE CAUSE OF INJURY WAS NOT OWN
NEGLIGENCE.—In action under Employers' Liability Law, plaintiff
does not have to show that proximate cause of injury was negli-
gence of defendant, but he must show that proximate cause was
not his own negligence.

2. TRIAL—WHERE ROOM FOR CONFLICTING REASONABLE INFERENCES,
QUESTION FOR JURY.—If there is room in evidence for conflicting
reasonable inferences, question should be left to jury.

3. MASTER AND SERVANT—SERVANT USING UNSAFE WAY GUILTY OF
NEGLIGENCE.—Where a servant unnecessarily and of his own voli-
tion uses an unsafe way or place to do his work when other and
safer places and ways are available, he cannot recover for in-
juries if danger is such that no ordinarily prudent person would
incur it under like circumstances.

4. MASTER AND SERVANT—PRESSMAN HELD NEGLIGENT BARRING RE-
COVERY UNDER EMPLOYERS' LIABILITY LAW. — Pressman injuring
hand between rollers while attempting to adjust a clip, after giving
directions to turn cylinders over, *held* guilty of negligence as
matter of law barring recovery under Employers' Liability Law,
there being a safer way to turn cylinder over, notwithstanding
that he had been directed to do work as he did it by foreman.

1. See 18 R. C. L. 663.

2. See 26 R. C. L. 1067.

3. Disobedience of rules or regulations of master as affecting
right of servant to recover for personal injuries, see notes in 8 Ann.
Cas. 3; 10 Ann. Cas. 152; Ann. Cas. 1912A, 84. See, also, 18 R. C. L.
659.

5. MASTER AND SERVANT — 'CUSTOM OF DOING WORK IN DANGEROUS
    WAY DOES NOT BIND EMPLOYER.—That it is usual custom of em-
    ployees to do their work in a dangerous or reckless way will not
    bind employer and prevent him claiming negligence under Em-
    ployers' Liability Law.

APPEAL from a judgment of the Superior Court
of the County of Maricopa.  R. C. Stanford, Judge.
Judgment reversed and cause remanded with direc-
tions to dismiss.

Mr. Richard E. Sloan, Mr. C. R. Holton, Mr. Greig
Scott and Messrs. Bullard & Jacobs, for Appellant.

Messrs. Jennings & Strouse, for Appellee.

ROSS, J.—Plaintiff seeks to recover for injuries
sustained while in the employ of defendant as its
pressman in charge of its duplex tubular printing
press.  At the time the press was being operated
by electric power and he received his injuries in at-
tempting to adjust a clip on a revolving cylinder while
it was in motion, and in doing so his left hand got
caught between two such cylinders and was very
badly crushed and injured.  He had been working for
defendant about one year, the first eight or nine
mont  exclusively as a stereotyper, and the last three
or fo  months as a stereotyper and assistant to the
foreman of the pressroom.  He had been acting as
such assistant for the purpose of qualifying himself
to do the foreman's work while the latter was on his
vacation.  The foreman left the latter part of July,
1921, leaving plaintiff in charge.  Plaintiff was hurt
on the morning of August 11, 1921, while acting as
substitute foreman.

The printing-press has five decks or units; each
deck or unit, as we understand it, consisting of two

5.  See 18 R. C. L. 662.
    See 26 Cyc. 1248, 1260, 1416, 1421; 38 Cyc. 1517.
        26 Ariz.—30

stereoplate cylinders and two impression cylinders. Stereoplates are put on to the cylinders daily to print defendant's paper. They are held or fastened to the cylinders by means of clips. In removing plates from the cylinders, which in this case was done each morning, the clips were supposed to readjust themselves automatically. When they did not do so, it was the duty of the person removing plates to place them in position so that when plates were next put on the cylinder the clips would catch them without any handling.

Assisting plaintiff on the morning he was injured was Harry Feurriegel, who had been working as an assistant in the pressroom under Hansen for about a year and a half. One of his duties each morning was to remove the plates from the cylinders and to wipe and oil the press. Sometimes he would adjust the clips as he would remove the plates. He did not do so on the cylinder on which plaintiff was working. Just as plaintiff was in the act of putting a plate on cylinder, he discovered the clips were not in place, and it became necessary for him to use his hands in adjusting them; but before he could do so the cylinder had to be turned until the clip was on top of it, when he could reach in about his arm's length and adjust it. This had to be done to set the plates on the cylinder.

There were two ways of turning the cylinder, both well known to plaintiff. One was by hand power, and the other by electric power. The former was accomplished by the use of an iron bar held in the hand, one end being inserted in holes in a wheel on a shaft that connected with the cylinder. There were six holes in the wheel. Sometimes it would be necessary to bar it two or three times to get the cylinder in position to adjust it. The hand power was always used in putting plates on or taking them off cylinder, as while this was being done the cylinder had to be

still. The other way of turning the cylinder was by the application of electric power, and it seems that both kinds of power, but generally electric, were used in making adjustments or corrections in the clips when they were out of place.

Plaintiff was using the electric power on the occasion that he was hurt. His explanation we give in his own language:

"I had just throwed in this deck and turned the power on and was going to put my plate in, and I seen the cleats were not back, and I told the boy who was helping me, I said, 'Harry, the clips are not back, start her up,' and he started her up, and I reached in to get them and was pulling them back. When I reached in to get them, I reached in and got ahold of them, and it comes right out. This morning it didn't pull; this first finger caught on it when I pulled; it didn't come; and when it didn't come the press was going on and ran into the other cylinder, and this finger went in there and took this hand in. The boy said he had shut the power off before I hollered and it coasted in with my hand. If he hadn't shut it off—it will coast from five to ten seconds the speed we were going, running faster than that, it will coast from twenty seconds to half a minute before it will stop, and so my hand went in, and he had to back it up for me to get my hand out."

It is not seriously disputed that Hansen, the regular foreman under whom plaintiff worked as an assistant the preceding three or four months before he was injured, had been doing the same thing in the same way that plaintiff was doing it when injured. On that point the plaintiff says:

"That was the way I had been shown to do it. Mr. Hansen, the foreman, gave me those instructions. He did that work exactly the same way I done it. I ran the press for him last night while he done it. I never observed Mr. Hansen before I got hurt use that bar, not to turn the press to get the cleats back. I never saw him use it since I got hurt."

Harry Feurriegel testified on that point as follows:

"In order to reach the clips, he reached his hand in and pulled them back about the length of your arm. He (Hansen) did it all the time that way, the same way that Sam did it. My job was to turn on the power. I saw Chris Hansen do it pretty near every day. There was a bar there to put on the plates with. I have seen Chris Hansen use the bar to turn over the machine instead of the motor, to put on the plates you have to. I never saw him do it in pulling the cleats back."

The plaintiff, in the presence of the court and jury, showed what he was doing when hurt. Hansen, in testifying, stated:

"I saw Sam (plaintiff) show the jury where that cleat was. That is the way I do it. I do it at my own risk. I never told Sam Suits not to do it that way. My instructions was to the helper to do that. The helper should have done that, not Sam. He saw me do it the same way."

Again:

"I pull the clips occasionally now. I pull it back with my hand just part of the time. I did it when Mr. Suits was present while the machine was operated by electric power."

He also testified that—

He had "cautioned plaintiff about the machine, to be very careful and not to get caught, and if anything happened to let the machine go, to keep from getting caught in it."

Plaintiff was an experienced stereotyper. According to his own testimony he put in five years as an apprentice and had been a journeyman for six years. He had been around printing-presses eleven years, and had about five months' experience as a pressman, three or four months of which time he was learning the work under Hansen. His employment by the defendant was his first contact with a tubular press.

The time required to learn the trade of a press fore-
man, according to the evidence, is five years. The
plaintiff was twenty-six years old at the time of his
injury.

On cross-examination plaintiff admitted he knew the
cylinders could be revolved by hand power; that he
had seen it done and knew himself how to do it; that
while the operation by hand power was not very
quick, it was perfectly safe, because the cylinders
were still as he would reach in to adjust the clips;
that he had no assistant when using hand power
for such purpose, as he would turn cylinders to proper
position and then, while they were still, adjust clips.
On the other hand, he stated when electric power was
used he had an assistant to handle the throttle, who
started machinery as he directed and kept cylinders
revolving while he reached in to pull back the clips,
which consumed in all two or three or four seconds;
that he could look right in and see clip and cylinder
all the time, and that while he was holding clip his
hand was caught between the cylinders.

Defendant makes two assignments of error. The
first is directed at the court's order refusing to grant
its motion for an instructed verdict at the close of
the case, and the other is the court's refusal to give a
requested instruction.

The action was brought under the Employers'
Liability Law, chapter 6, title 14, Civil Code of 1913.
The purpose of this law is to afford relief to em-
ployees who may suffer injury in certain named and
defined hazardous occupations, when they do not
themselves negligently cause the injury. Included in
such occupations is work of the kind in which the
plaintiff was engaged at the time he was injured.
The statute, paragraph 3156, says:

"The occupations hereby declared and determined
to be hazardous within the meaning of this chapter
are as follows: . . .

"(10) All work in mills, shops, works, yards, plants and factories where steam, electricity, or any other mechanical power is used to operate machinery and appliances in and about such premises."

We would first direct attention to the fact that the right of action under this law is purely a creature of the statute, and that it has features that distinguish it from most, if not all, rights of action under other provisions of the law for injuries sustained by employees. The action is very different from the common-law action of negligence. The latter distinctly sounds in tort; whereas, the former has none of the elements of tort. In this action the plaintiff does not have to show that the proximate cause of his injury was the negligence of defendant, but he must show that the proximate cause of his injury was not his own negligence. The employer's liability is not based, as it is at common law, upon any violation of duty owing to the employee from the employer. It is made to depend upon the relationship. Therefore the rules governing in an action for negligence are not controlling and very often are inapplicable and misleading. Under the common-law rule, the servant's right to recover damages from the master for personal injuries might be defeated on several grounds: (1) When it was caused by negligence or unskillfulness of a fellow-servant; or (2) by his own negligence in working under conditions known by him to be dangerous or where the danger was apparent, in which case it was said he assumed the risk; or (3) where the accident causing his injury was due to his own negligence or to the combined negligence of the master and servant.

Under the Employers' Liability Law, all the above defenses are abrogated except one: The negligence of the employee when it causes the accident is a perfect defense. Every other common-law defense is regarded as a condition of the hazardous occupation

determined and declared to be such by the statute. Thus an incompetent or careless fellow-servant and an unsafe place to work are conditions of such occupations, as indeed are all other defenses at common law except the one named.

There is no material conflict of evidence. It all points the same way. The question, therefore, under the motion for a directed verdict, was: Might reasonable men differ as to whether, under the evidence, the plaintiff's injury was caused by his own negligence, or by an accident due to the condition or conditions of his occupation? If there was room in the evidence for conflicting reasonable inferences as to which of the two possible causes mentioned plaintiff's injury should be ascribed, the question was very properly left to the jury.

Boiled down, the evidence was to the following effect: The plaintiff at the time of his injury was twenty-six years old. From the record he appears to be a man of fair and reasonable intelligence. He had worked about printing-presses eleven years before he was injured. He was a journeyman stereotyper; had worked five or six months as a pressman; had been instructed for some three or four months by the defendant's press foreman how to operate defendant's press. He knew the two ways of turning the cylinders and had turned them both ways; knew there was no danger in using the hand to adjust clips on cylinder as long as it was at a standstill, in which condition it always was when turned by hand power. He knew when the cylinders revolved that they revolved toward each other, and that anything on their surface, if left there long enough, would inevitably be drawn between them and crushed. He knew that these cylinders were made to operate that way so that when blank paper was placed on their surface it would be drawn in between them and come out on the opposite side covered with printed matter. He must

have known that the gripping force that causes the paper to pass between the cylinders will also take hold of and crush the human hand if permitted the contact. He knew that if he used his fingers to adjust clips which the cylinders were revolving under electric power he must do so very quickly or get caught and hurt. He knew what would happen to his hand if by sudden impulse the cylinders should surge forward unexpectedly, or if the hand or arm should become rigid, or the sight faulty, or the faculties dulled. On the other hand, the regular foreman adjusted the clips right along as plaintiff was doing it when hurt, and instructed him to do it that way. Because electric power relieved the operator from using the bar, it was easier and quicker.

Unless the plaintiff had a right to rely upon the instructions and superior knowledge of Hansen and for that reason do the work while the cylinders were moving under electric energy even though the danger was patent and obvious, his case falls within the rule stated as follows:

"A presumption that is founded upon common sense and common experience is, that an individual employed to do a work will see, understand, and appreciate any dangers incident to the work, which an ordinarily prudent and intelligent person of the same age and experience would see, understand and appreciate." *Pruitt* v. *Norfolk Western Ry. Co.*, 188 Ky. 204, 221 S. W. 552.

There are many reported cases where the employee has sought to recover damages for injuries sustained in working around rollers and cylinders, such as in this case, and while most of the plaintiffs were minors and based their right of recovery largely upon the lack of warning, the decisions of the courts have been practically uniform against the right to recover. The reason assigned by the courts is that even minors possess enough intelligence and information to understand the dangers incident to such work.

In *Hanel* v. *Obrigewitch,* 39 N. D. 540, 3 A. L. R. 1029, 168 N. W. 45, the plaintiff was caught and crushed between two rollers in a flour and feed mill. He was a full-grown man, a blacksmith by trade; had worked in the repairing of wagons, plows, etc.; had farmed a while, and for about eight months used an ordinary farm feed mill; had worked about three and one-half months at the place where he was injured. The rollers became choked and clogged, and the plaintiff, while cleaning the clogged machine, was injured by his hand being caught between the rollers of the machine. One of the plaintiff's contentions was that he was doing the work at the time of his injury in the same way his employer showed him to do it and himself did it. In passing upon that question, Mr. Chief Justice BRUCE, whose opinions are always well-reasoned and sound, used this language:

"We realize that there are cases where an employee is entitled to rely upon the superior knowledge of his employer. Even, however, if the action of the employer in cleaning the roller in the way that he did could in any way be construed to be an instruction, it can hardly be believed that he had any superior knowledge in this respect. Surely every one who has worked on a farm or anywhere else knows that it is dangerous to try to remove particles from between turning wheels, and that, while machinery is in operation and the engines are working, the rolls are liable at any time to start revolving, even though they may be temporarily clogged, and this even though the pressing of the belt thereon may increase the friction and more surely and immediately produce the result.

"It is perfectly true, as pointed out by the plaintiff, that it is a general rule that, where there is a safe and unsafe way of doing the work, the master must give the servant instructions how to do it to avoid injury. *Missouri Pac. Railroad Co.* v. *Watts,* 64 Tex. 568.

"There is, however, no reason to believe that in the case at bar the question of skill was involved.

It was a mere question of the ordinary knowledge which every one possesses. The plaintiff himself testifies that there was a way to stop the rolls and to thus clean the machinery with safety, and that was either to throw off the belt or to stop the engine. The question is not one of contributory negligence or of the assumption of risk. *It is a question of negligence merely.*" (Italics ours.)

In *Berger* v. *St. Paul, M. & M. Ry. Co.*, 39 Minn. 78, 38 N. W. 814, the plaintiff, a full-grown man, was suing for damages on account of his fingers being caught and crushed in the rollers of a machine. The court there said:

"There was no danger in working the machine unless the hand should get caught and drawn in between the rollers, in which case of course it would be crushed. This danger was open to the senses, as apparent as the danger to one who should lie down on a railroad track in front of an approaching locomotive. No one of the commonest capacity could see the machine work and see what it would do with a plate of boiler iron, without fully appreciating the danger, and knowing that, if he would avoid injury, he must take care not to get his hands between the rollers. The plaintiff had, as he testifies, seen the machine worked by others almost every day, probably, during all the time of his apprenticeship. He had worked it himself every day for a month. Knowledge of the danger was forced on him by his senses. No amount of notice or instruction could have better informed him. The defendant had a right to assume that he knew it. It is apparent that no degree of skill or experience was required to keep the hands away from the rollers. It does not appear that in working the machine there was any need to have the hands so near the rollers that they were likely to get between them."

There are many cases to the same effect, amongst which are the following: *Crowley* v. *Pacific Mills*, 148 Mass. 228, 19 N. E. 344; *De Souza* v. *Stafford Mills*, 155 Mass. 476, 30 N. E. 81; *Coullard* v. *Tecumseh*

*Mills,* 151 Mass. 85, 23 N. E. 731; *Ciriack* v. *Merchants' Woolen Co.,* 146 Mass. 182, 4 Am. St. Rep. 307, 15 N. E. 579; *Connolly* v. *Eldredge,* 160 Mass. 566, 36 N. E. 469; *Groth* v. *Thomann,* 110 Wis. 488, 86 N. W. 178; *Gardner* v. *Paine Lumber Co.,* 123 Wis. 338, 101 N. W. 700; *Roth* v. *Barrett Manufacturing Co.,* 96 Wis. 615, 71 N. W. 1034; *Kroger* v. *Cumberland Fruit Package Co.,* 145 Wis. 433, 35 L. R. A. (N. S.) 473, 130 N. W. 513.

Aside from the fact that the danger was open, patent and obvious, so that any person of ordinary intelligence and understanding could see and appreciate it, the defendant had provided another and a safe way to adjust clips which the plaintiff could have followed without any danger whatever. The rule of law, when such a situation is presented to an employee, is stated as follows:

"Where a servant unnecessarily and of his own volition uses an unsafe way or place to do his work when other and safer ways or places are available he cannot recover for injuries sustained by reason of his negligent act if the danger is such that no ordinarily prudent person would incur it under like circumstances." 26 Cyc. 1248.

When the rule is applied to the facts of the present case, in connection with the rule that will not permit an employee to say he was not negligent when he sees, knows and appreciates the danger, it is not possible to permit this judgment to stand unless we disregard these well-established rules.

"The rule is rooted in the principle of public policy that enjoins upon every one the duty of exercising due care to preserve his body and health from mutilation and injury. The individual is given strength, reason, ears, and eyes, as a means of general protection, and he is in duty bound to employ these under all circumstances in a reasonable manner for the promotion of his own personal safety. So, in whatever station, or in whatever place he may be, the

employee is never excused for an abandonment of care in the avoidance of bodily harm." *New York, C. & St. L. R. Co.* v. *Hamlin,* 170 Ind. 20, 15 Ann. Cas. 988, 83 N. E. 343.

The only possible excuse plaintiff did or could offer for doing the work as he did is that Hansen did it that way. At first blush this reason would seem a sufficient justification because Hansen was in charge of the defendant's printing department. It was natural for the plaintiff to look to him for instructions and directions as to how the work should be done and, as a general rule, to rely upon such instructions and directions. But where it is apparent to the employee, as it must have been in this case, that to follow such instructions and directions he must do his work in a dangerous way when there was open to him a safe way, he, as a common sense, reasonable person, should adopt the safe way. Hansen said he did the work while the cylinders were revolving at his "own risk." That his deduction as a legal proposition is correct we can have no doubt. If Hansen had been hurt in one of his daring adventures to adjust clips, it is hardly conceivable that the law would adjudge that he at the time was in the exercise of reasonable care or ordinary prudence. He could see and appreciate the danger, but it was no more obvious and patent to him than to plaintiff; nor was the knowledge of the safe way to do the work exclusively his. It was as well known to plaintiff. The fact that it is the usual custom of employees to do their work in a dangerous or reckless way will not bind the employer. The standard of due care required of persons engaged in hazardous occupations cannot be lowered by the habitual negligence of others in the same line of work. *Carrier* v. *Union Pac. Ry. Co.,* 61 Kan. 447, 59 Pac. 1075.

The law is very liberal toward employees, and it has been the effort of the court to so construe it;

but when the employer supplies him with modern and up-to-date machinery and all kinds of tools with which to do his work safely, the least the employee can do is to exercise ordinary care to avoid being injured. This much he is not only morally but legally obligated to do.

The public policy, as shown by the Constitution and laws of this state, is to compensate the employee for every injury that he may sustain while being employed in dangerous or hazardous occupations. If he happens to be injured through his own negligence, while he may not recover under the Employers' Liability Law (Civ. Code 1913, pars. 3153–3162), he may receive compensation under the Workmen's Compensation Law (Civ. Code 1913, pars. 3163–3179). We think in a case of this kind, where the plaintiff was clearly aware of the risk he was taking and the dangers incident to the work he was doing, it ought to be held that his own negligence was the proximate cause of his injury, and he should seek relief under the Workman's Compensation Law, and not invoke the remedy open to the employee who is free from negligence and is injured by an accident due to a condition or conditions of his occupation.

We think this case is controlled by the rule announced in *Calumet & Arizona Mining Co.* v. *Gardner,* 21 Ariz. 206, 187 Pac. 563, and *Arizona Power Co.* v. *Hayes,* 24 Ariz. 322, 209 Pac. 280. Is seems to us that the motion for a directed verdict should have been granted.

The judgment is reversed, and the cause remanded, with directions that the complaint be dismissed.

LYMAN, J., concurs.

McALISTER, C. J. (Dissenting).—I am unable to concur because the judgment in my opinion should be affirmed.

At the time of the accident appellee had been employed by appellant about nine months. His work was that of a stereotyper, an occupation he had followed a number of years; but during the three or four months preceding the accident he spent a portion of his time in the pressroom learning the work of a pressman, the apprenticeship of which, according to the testimony, is five years. At the beginning of this three months' period, he took the place of the regular assistant pressman, who was discharged, and did that work under the direction of the foreman, Hansen, until ten days before the accident, when the latter went on his vacation and he was placed in charge of the press. He had not worked on a press previous to this time, the duties of a stereotyper and a pressman being entirely distinct. In fact, he had never before seen a press like the one in question. What he knew about running one he learned during these three or four months from Hansen, his instructor, and it is undisputed that in showing him how to adjust the clips and cleats Hansen always caused the cylinders to be turned by electric power. Appellee, it is true, knew the press could be turned by hand power, but did not know that it should be so turned when the clips and cleats were being pulled back, unless his own powers of observation gave him such knowledge, because Hansen had not so instructed him either by word of mouth or by example. For several months he had watched Hansen adjust them in this way, never in any other.

When the accident occurred, appellee was attempting to pull the cleats back exactly as Hansen did; that is, he was doing it identically as he had been instructed to do it by the person under whom he had been ordered to learn the branch of the business of which it formed a part. Yet it is contended, and the contention is upheld, that appellee's injury was due solely to his own negligence in voluntarily pulling the

cleats back by the use of electric rather than hand power because it was dangerous to use the one and safe to use the other, and both methods were known to him. It is true that it is more dangerous to adjust the cleats with electric than with hand power; in fact, there is no danger at all attached to the latter, because the cylinders are not moving when the adjustment is made by its use. But whether using electric power for this purpose is so dangerous that no ordinarily prudent person would attempt it does not sufficiently appear from the record that this court should say as a matter of law that the mere selection of that way of doing this particular act constitutes such negligence as to preclude the plaintiff from recovery. We recently said, in *Tom Reed Gold Mines Company* v. *Morrison, supra,* p. 281, 224 Pac. 822:

"The mere fact that one selects voluntarily the more dangerous of two ways of doing a thing does not of itself as a matter of law constitute negligence. 'It is still a question for the jury,' says the court in *Lewis* v. *Texas & P. Ry. Co.,* 57 Tex. Civ. App. 585, 122 S. W. 605, 'unless the facts proved show the selection of a method obviously more hazardous and under circumstances such as would justify the court in concluding as a matter of law that no person of ordinary prudence would have adopted it.' *Bailey* v. *Prime Western Spelter Co.,* 83 Kan. 230, 109 Pac. 791; *Headrick* v. *H. D. Williams Cooperage Co.,* 97 Ark. 553, 134 S. W. 957."

Before this principle can be said to be applicable, it must appear that the selection of the unsafe method was voluntary. 26 Cyc. 1189; *Hutchison* v. *Cohankus Mfg. Co.* (Ky.), 112 S. W. 899; *Fritz et al.* v. *Salt Lake & O. Gas & Elec. Light Co.,* 18 Utah, 493, 56 Pac. 90; *Colorado Coal & Iron Co.* v. *Carpita,* 6 Colo. App. 248, 40 Pac. 248. Such, however, was not true of appellee's choice of electric power upon the occasion in question. He had been taught by appellant's foreman to use this power when adjusting the

clips and was never directed to use the other or shown how. He was therefore justified in assuming that it was expected of him that he should use electricity for this particular purpose, for it cannot be that he was taught to do it one way and his employer intended he should do it another, nor should it be assumed that the intention was that he should do it that other way. The only purpose appellant could have had in directing that appellee be taught the work of the pressman was that he might know how to do it himself as well as to see that it was done properly by others who might be under him. If it had been intended that he should use hand power at such times it is difficult to understand why he was not taught that way, since it would have been as easy to teach one method as the other. No other conclusion can be drawn, therefore, than that in using electric power he was obeying the instructions of his employer, and that such method, whether safe or unsafe, was selected by appellant itself and not by appellee. The fact that the instructions were given by its foreman instead of appellant itself is immaterial. The former's orders, the same as those of the employer himself, were supposed to be followed.

It is argued, however, and this view is upheld in the opinion of the majority, that the danger of the hand's being drawn between the cylinders and crushed when the clips were being pulled back by the aid of electric power was so apparent and great that appellee knew, or should have known, that it would probably have been injured if that method was followed, and that he should therefore have refused to adjust the clips in that way, regardless of the instructions of the foreman. The fact, however, that he saw Hansen do it almost daily for several months without any accident, and that Harry Feurriegel saw him do it for more than a year with the same result, shows, to my mind, that it was not so dangerous that this court

should say, as a matter of law, that appellee's failure to disobey his instructions and select the other method of adjusting the clips constitutes such negligence as to preclude a recovery by him.. If it were true that appellee had voluntarily adjusted the clips with the aid of electric power, it would still be impossible to say, as a matter of law, that the accident was due to his choice of a dangerous method of performing the act, because voluntary selection by an employee of an unusual and more dangerous way of doing a thing is scarcely distinguishable from contributory negligence; in fact, it is treated as such in many decisions (26 Cyc. 1189), and under the Constitution of this state, contributory negligence is made a question of fact and left to the jury. And the contention that appellee, having voluntarily chosen a dangerous method of adjusting the clips, assumed the risks incident thereto, would likewise fail, even though the doctrine of the assumption of risks applied under the Employers' Liability Law as under the law of negligence because it, like contributory negligence, is a question of fact for the jury.

The rule by which the conduct of appellee in this case should be judged is thus stated in *Reese* v. *Clark,* 198 Pa. 312, 47 Atl. 994:

"In Shearman & Redfield on Negligence (5th ed.) § 186, it is said: 'The true rule in this as in all other cases is, that if the master gives the servant to understand that he does not consider the risk one which a prudent person should refuse to undertake, the servant has a right to rely upon his master's judgment, unless his own is so clearly opposed thereto that, in fact, he does not rely upon his master's opinion. . . . A servant is not called upon to set up his own unaided judgment against that of his superiors; and he may rely upon their advice and still more upon their orders, notwithstanding many misgivings of his own.' "

And in *Patterson* v. *Railroad Co.,* 76 Pa. 389, 18 Am. Rep. 412, the court said:

"But where the servant, in obedience to the requirement of the master, incurs the risk of machinery, which though dangerous, is not so much so as to threaten immediate injury, or where it is reasonably probable it may be safely used by extraordinary caution or skill, the rule is different. In such case the master is liable for a resulting accident."

See, also, the following: *Texas & N. O. R. Co.* v. *Kelly,* 34 Tex. Civ. App. 21, 80 S. W. 1073; *Huhn* v. *Missouri Pac. Ry. Co.,* 92 Mo. 440, 4 S. W. 937; *St. Louis & S. F. Ry. Co.* v. *Morris,* 76 Kan. 836, 13 L. R. A. (N. S.) 1100, 93 Pac. 153; *Brinkmeier* v. *Missouri Pac. Ry. Co.,* 69 Kan. 738, 77 Pac. 586; *Schroeder* v. *Chicago & A. R. Co.,* 108 Mo. 322, 18 L. R. A. 827, 18 S. W. 1094.

In view of the requirement of the statutes of this state, paragraph 3157, Civil Code 1913, that employers in hazardous occupations shall inform their "employees . . . as to the duties and restrictions of their employment, to the end of protecting the safety of employees in such employment," it is difficult to understand why, if they instruct one of their employees to use a less safe method than another, the employee whose duty it is to obey, and not the employer who commands and is supposed to know whether what he directs is safe or unsafe, should be held responsible for an injury suffered by the former as a result of his compliance with the instructions given him.   Especially is this true where the facts are such as they are in this case. It seems clear that appellee was justified in relying upon the judgment of appellant's foreman, and that his act in obeying the latter should be regarded as the act of his employer and not of himself. *Reese* v. *Clark, supra.* Hence I am at a loss to see wherein the accident causing the injury did not arise out of the employ-

ment, the occupation in which he was engaged being admittedly hazardous.

To hold that an employee who performs an act in the line of his employment as he was instructed by his employer, either personally or through another, to perform it, cannot recover for an injury suffered while performing it, is, in my judgment, to give approval to a proposition not sustained by the law; certainly one the mere statement of which shows is far removed from any principle of natural justice. If appellant had failed to give appellee any instructions at all as to the manner of adjusting the clips, the provisions of paragraph 3157, *supra,* would have deprived it of any defense based upon the negligent manner of performing this act, unless the danger of using electric power was so apparent and great that no ordinarily prudent person would have attempted it even when directed to do so by the employer or his representative. But when appellant complied with the statute and gave the information required, appellee was justified in acting upon it, and I can conceive of no principle of law that would hold him responsible for an injury suffered by him as a result of his action, especially where, as here, it was not so dangerous to do as he was told that the foreman knew he would not attempt it.

The judgment should be affirmed.