[Civil No. 1969.   Filed September 30, 1922.]

[209 Pac. 280.]

ARIZONA POWER COMPANY, a Corporation, Appellant, v. C. BENJAMIN HAYES, Administrator of the Estate of RALPH W. GRIFFITH, Deceased, Appellee.

1. NEW TRIAL—SERVICE OF MOTION ALL THE NOTICE THAT IS REQUIRED. Under Civil Code of 1913, paragraph 596, service of copy of motion for new trial is all that is required, and it is not necessary to serve a notice of the motion.

2. APPEAL AND ERROR—APPEAL FROM ORDER DENYING NEW TRIAL NOT
   NECESSARY FOR REVIEW OF DENIAL AND SUFFICIENCY OF EVIDENCE.
   Under Civil Code of 1913, paragraph 1231, no specific appeal
   from order denying new trial is necessary, in order that the denial
   of the motion for new trial may be reviewed on appeal from the
   final judgment, or that the sufficiency of the evidence to sustain
   the verdict or judgment in an action tried before a jury may be
   considered.

3. TRIAL—MOTION FOR DIRECTED VERDICT WAIVED BY INTRODUCING EVI-
   DENCE.—Defendant's motion for a directed verdict at the close of
   plaintiff's case was waived by introducing evidence in defense.

4. MASTER AND SERVANT—BURDEN OF ISSUE OF CONTRIBUTORY NEGLI-
   GENCE ON PLAINTIFF.—In an action under the Employers' Liability
   Act for death, the burden of proof is on plaintiff to affirmatively
   prove that the injuries resulting in the death were not caused by
   deceased's own negligence.

5. NEGLIGENCE—QUESTION FOR COURT ON UNDISPUTED EVIDENCE.—
   Where the facts are undisputed, and the inferences which may be
   drawn from them not equivocal, and can lead to but one conclu-
   sion, the court will adjudge as a matter of law whether there is
   or is not negligence.

6. TRIAL—ON MOTION FOR DIRECTED VERDICT, ONLY FACTS TENDING TO
   SUPPORT PLAINTIFF'S CASE CONSIDERED.—A motion for a directed
   verdict must be decided on the admitted facts, those brought out
   by plaintiff's competent evidence, and admitted by the motion, and
   such facts, brought out by defendant's competent evidence, as tend
   to support plaintiff's case or corroborate plaintiff's evidence, and
   facts presented by defendant's evidence not tending to support
   plaintiff's case or corroborate his evidence cannot be considered.

7. MASTER AND SERVANT—ELECTRIC LINEMAN, VIOLATING RULES, HELD
   NEGLIGENT.—Where an experienced electric lineman undertook to
   transfer wires to a new pole in the midst of a network of wires,
   some carrying a deadly current, without grounding them, as re-
   quired by a rule of the employer adopted pursuant to Civil Code
   of 1913, paragraph 3157, he was guilty of negligence, preventing
   recovery for his death, in the absence of any showing of an ex-
   traordinary situation, requiring the sudden exercise of judgment or
   discretion.

8. MASTER AND SERVANT—ELECTRIC LINEMAN'S VIOLATION OF RULES
   NOT EXCUSED.—Testimony that an electric lineman, in working on
   or near wires charged with a deadly current without grounding

---

4. On burden of proof as to contributory negligence under Em-
ployers' Liability Act, see note in 33 L. R. A. (N. S.) 1218.

On liability of electric company to employee for injury caused
by electric shock, see note in 32 L. R. A. 351.

them, as required by the employer's rule, was doing the work in the usual manner, did not excuse the violation of the rule, or prove acquiescence therein by the employer.

APPEAL from a judgment of the Superior Court of the County of Yavapai. J. J. Sweeney, Judge. Reversed, with directions to enter judgment for appellant.

Mr. G. P. Bullard, for Appellant.

Messrs. Favour & Cornick and Mr. Arthur G. Baker, for Appellee.

JENCKES, Superior Judge.—Plaintiff by this action seeks to recover from the defendant (appellant here) damages for the death of his intestate, Ralph G. Griffith. Recovery is sought under the Employers' Liability Act. Chapter 6, title 14, Rev. Stats. of 1913. The occupation was a hazardous one within the statute, and the injury resulting in Griffith's death was caused by an accident which occurred while he was engaged in such occupation. But appellant contends that the evidence shows, as a matter of law, that the deceased was injured by reason of his own negligence.

A motion for a directed verdict for defendant at the close of plaintiff's case was denied. A similar motion at the conclusion of all the evidence was also denied. The jury returned a verdict for plaintiff in the sum of $2,000 upon which judgment was entered. Appellant seasonably filed its motion for a new trial and served a copy thereof upon appellee. This motion, not having been passed upon or continued for hearing within twenty days from rendition of judgment, was denied by operation of law. Rev. Stats. 1913, par. 591. Thereafter appellant duly perfected its appeal. The appeal is from the judgment; appellant assigning as error the refusal of the trial court to direct a verdict in its favor at the close of plaintiff's case, and again at the close of all the evidence.

Appellee objects to a reviewal of the evidence upon this appeal, first, because no notice of the motion for a new trial was served upon him; and, second, because no appeal has been taken from the denial of the motion for a new trial. The first objection is not well founded. The service of a copy of the motion for new trial is all that is required under paragraph 596, Revised Statutes of 1913. As to the second objection, under the provisions of paragraph 1231, Revised Statutes of 1913, no specific appeal from the order denying the motion for new trial is necessary upon appeal from a final judgment, in order either that the action of the court below in denying the motion for new trial may be reviewed, or that this court may consider the sufficiency of the evidence to sustain the verdict or judgment in an action tried before a jury. All that is necessary is that a motion for a new trial be made and denied.

As to appellant's first assignment of error, its motion for a directed verdict at the close of plaintiff's case was waived by introducing evidence in defense. *Southwest Cotton Co.* v. *Ryan,* 22 Ariz. 520, 199 Pac. 127.

Upon appellant's remaining assignment of error, all other material allegations having been sufficiently established, it remains but to determine whether or not the undisputed facts as presented by all the evidence are sufficient to affirmatively prove that the injuries resulting in Griffith's death were not caused by his own negligence. The burden of proof in that respect is upon the plaintiff. *Southwest Cotton Co.* v. *Ryan, supra; Calumet & Arizona Min. Co.* v. *Chambers,* 20 Ariz. 54, 176 Pac. 839.

This court has adopted the rule, in cases arising under the Employers' Liability Act, that:

"Where the facts are undisputed, and the inferences which may be drawn from them are not equivocal and can lead to but one conclusion, the court will

adjudge, as a matter of law, that there is or is not negligence." *Calumet & Arizona Min. Co.* v. *Gardner,* 21 Ariz. 206, 187 Pac. 563.

The undisputed facts, for the purpose of the consideration of the motion made at the conclusion of all the evidence in the case, are, in addition to any other admitted facts, those brought out by all competent evidence introduced by the plaintiff; the truth thereof being admitted by the motion, and as well all facts brought out by competent evidence of the defendant tending to support plaintiff's case, or in corroboration of plaintiff's evidence, if any such there be. No purported facts presented by defendant's evidence, which do not tend to support plaintiff's case, or corroborate his evidence, can be considered.

With this in mind, the following are the undisputed facts of the case:

The defendant power company owned and operated a certain electric substation, and three high-voltage power lines connected therewith and radiating therefrom, carrying respectively 11,000, 45,000 and 15,000 volts of electricity at the time of the accident. A set of six telephone wires and another set of three wires, normally carrying 220 volts of electricity, for the operation of a wood-saw, but which at the time of the accident was cut off from its source of power in the substation, also owned and operated by defendant, were strung upon a certain wooden pole 75 or 100 feet from the substation and a warehouse adjacent thereto. The telephone wires extended from the warehouse and the "wood-saw circuit" from the substation, the two lines converging at the aforesaid wooden pole. There they separated; the "wood-saw circuit" passing under the three high-voltage power lines, being below the 15,000-volt line a distance of about three feet.

Griffith, at the time of the accident which resulted in his death, was employed by the defendant company

as a lineman foreman, with two other linemen by name
Heffelman and Hill working subordinate to him.   He
was an experienced lineman and electrical worker,
and had been employed by the defendant company in
such capacity for upwards of two years prior to his
death.   On the day of the accident he had been in-
structed to replace the aforesaid pole, which had be-
come wobbly and unstable, with a new one, and to
transfer thereto from the old pole the telephone wires
and the "wood-saw" wires.   He began the work on
the morning of February 22, 1918, and by about 3
o'clock in the afternoon the new pole had been "set"
and the telephone wires transferred to it.   The
"wood-saw" wires remained attached to the old pole.

According to the testimony of plaintiff's witness
Heffelman, Griffith was up on the new pole, standing
on his "climbers," his safety belt in place, his head
"in the telephone wires, touching them."   He was
"putting on a guy wire about the pole," for the pur-
pose of "keeping the lines from pulling over the
pole."   "It is supposed to be attached somewhere be-
low the crossarm and goes to the ground, anchored."
While in this position, by some means not appearing
from the evidence, the fact, however, being stated by
the witness Heffelman, the "wood-saw" circuit came
in contact with the 15,000-volt circuit at the point
where the former passed under the latter.   Instantly
there was a "large flash about his [Griffith's] head"
at the point where his head was touching the tele-
phone wires, and he became rigid and unconscious.
The power was turned off the 15,000-volt line at the
substation, and Griffith was removed from the pole.
He died thirteen hours thereafter as the result of the
injuries received from the electrical shock thus sus-
tained.

Further, it is undisputed that defendant had posted
certain rules informing its employees as to the duties
and restrictions of their employment pursuant to the

provisions of paragraph 3157, Revised Statutes of 1913; that decedent had ample opportunity to familiarize himself therewith; that he did not govern himself by such rules in the performance of the work in question; that the accident could not have happened, if he had grounded the wires in the manner prescribed by such rules; that all tools requisite and necessary for the grounding of the wires, pursuant to the rules, were immediately available to him.

That the rule requiring the grounding of wires was a reasonable and practicable means of protection is evident from plaintiff's witness Heffelman, who testified: "That was a rule for personal safety—anybody should do that." That the decedent elected to substitute his own judgment as to how the work should be done instead of complying with the rule is also apparent from Heffelman's testimony, to the effect that "the grounding of the wires was not considered necessary, because it was a dead circuit." The rule itself required that "foreman and patrolmen must properly ground lines upon which work is to be done *before doing any work on or near lines normally carrying current*" (italics ours), and then prescribed the method of making the ground, and directed where to procure the necessary implements, which in this particular instance were in the substation close by. That the rule was applicable to the work being performed by decedent there is no possible room for doubt, after examination of Plaintiff's Exhibit "A," a map illustrative of the situation. Decedent was working in the midst of a veritable network of wires, three lines of which were each charged with a current of deadly voltage. He was working both "on and near lines normally carrying current."

Accordingly we have here a clear-cut case of an employee engaged in an occupation in the highest degree hazardous; his employer, pursuant to law, prescribing reasonable rules, which, if followed, would

afford complete protection to the employee; the employee deliberately ignoring such rules, and as a consequence thereof meeting death. The violation by an employee of a rule adopted by his employer for his protection, unless justified, is negligence on the part of the employee. 18 R. C. L. 660. Whether or not in this case the decedent was justified in thus ignoring the rule no attempt is made to show.

It is not even suggested that an extraordinary situation existed requiring the sudden exercise of judgment or discretion on the part of decedent. And plaintiff did not attempt to prove that the decedent's manner of doing the work was a safe and approved method, or that it had been acquiesced in by the defendant. The most that can be said in that respect is that the witness Heffelman testified that decedent was performing the work in the usual manner. This but proves the truth of the adage that the pitcher which goes too often to the well will be broken at last, and neither excuses the violation nor proves acquiescence therein by the defendant.

Thus the undisputed facts and the legitimate inferences therefrom clearly and unequivocally lead to the conclusion that the death of plaintiff's intestate was caused by his own negligence. The trial court erred in denying defendant's motion for a directed verdict at the conclusion of all the evidence.

The judgment is reversed and the cause remanded, with directions to the trial court to enter judgment for the defendant.

ROSS, C. J., and FLANIGAN, J., concur.

NOTE.—McALISTER, J., being disqualified, took no part in the decision of this case.