[Civil No. 2120.  Filed February 7, 1924.]

[222 Pac. 714.]

# PRICE & PRICE INVESTMENT COMPANY, a Corporation, Appellant, v. J. C. McGRATH, Appellee.

1. APPEAL AND ERROR — JURY'S FINDING ON CONFLICTING EVIDENCE CONCLUSIVE.—Jury's finding on conflicting evidence as to the condition of an automobile, when accepted as part payment on a lot, and as to representations made concerning it, *held* controlling on appeal.

2. VENDOR AND PURCHASER — NONPAYMENT OF INSTALLMENT WHEN DUE HELD NOT TO WORK FORFEITURE OF CONTRACT.—Failure of a purchaser of a lot to pay an installment until four days after it was due *held* not to work a forfeiture of his contract, which merely provided that, "in the event . . . the purchaser fails to comply with his part of the contract, the earnest money receipted for herein shall be forfeited," no injury from the delay being shown, and the purchaser having been led to believe that an extension of the contract would be allowed.

3. VENDOR AND PURCHASER — CONTRACT HELD TO PROVIDE ONLY FOR FORFEITURE OF EARNEST-MONEY.—A contract for the sale of a lot for $1,050, which recited the receipt of $750 "as earnest money and part purchase money," which provided that, "in the event . . . the purchaser fails to comply with his part of the contract, the earnest money receipted herein shall be forfeited," *held* to provide only for a forfeiture of that portion of the $750 payment which constituted earnest-money, the whole being deemed to include more than earnest-money, in view of the size of the purchase and recital in the contract.

4. APPEAL AND ERROR — ASSIGNMENTS OF ERROR IN GIVING AND RE-FUSAL OF INSTRUCTIONS HELD INSUFFICIENT. — Assignments of error in that the court "erred in giving instructions . . . that were contrary to law, and were ambiguous, misleading, and preju-dicial," and that it erred "in refusing to give instructions . . . requested by the appellant," *held* an insufficient compliance with

1.  See 2 R. C. L. 194.

2.  Effect of failure of vendee to pay according to contract, see note in L. R. A 1918B, 544.  See, also, 6 R. C. L. 724; 8 R. C. L. 573; 27 R. C. L. 613.

4.  See 2 R. C. L. 163.

Supreme Court Rule XII, subds. 4, 5, relating to assignments of error in the giving and refusal of instructions.

5. TRIAL—INTRODUCTION OF EVIDENCE AFTER DENIAL OF MOTION FOR DIRECTED VERDICT CONSTITUTES WAIVER OF ERROR THEREIN.— A defendant, by introducing evidence after refusal of its motion for a directed verdict, thereby waives objection to the ruling.

6. VENDOR AND PURCHASER—FORFEITURE OF CONTRACT HELD UNWAR RANTED.—Where the vendor of a lot, having accepted an automobile as an initial payment, retained it for four months without complaint as to its condition, and thereafter declared a forfeiture of the contract for a default of four days in the payment of an installment due, without assigning as a reason therefor the subsequently alleged bad condition of the car, *held*, that it was not entitled, in an action for specific performance by the purchaser, to have the contract declared forfeited.

APPEAL from a judgment of the Superior Court of the County of Maricopa. R. C. Stanford, Judge. Affirmed.

Mr. Carl A. Davis, for Appellant.

Messrs. Bullard & Jacobs, for Appellee.

ROSS, J.—The appellee (referred to hereafter as plaintiff) brought this action to compel appellant (referred to hereafter as defendant) specifically to perform a contract to sell him lot 18, block 13, F. Q. Story Addition to the city of Phoenix. The terms and conditions of the contract were as follows: Price $1,050, to be paid: $750 as "earnest money and part purchase money" on date of contract (March 4, 1921), which is receipted for; $100 on June 1, 1921; $100 on August 1, 1921, and $100 on November 1, 1921; deferred payments to bear 8 per cent interest, and to be secured by title to property until paid; the seller's title to be merchantable, and, if found defective, to have ninety days' extension to perfect it.

5.   See 26 R. C. L. 1083.

See 3 C. J. 1378; 4 C. J. 857; 38 Cyc. 1590; 39 Cyc. 1606, 1608.

Plaintiff alleged the payment of the $750, and its acceptance, the tender of deferred payments as they became due, the refusal of defendant to accept such payments, and offered to pay into court for defendant such deferred payments.

We gather from the answer and evidence the defense was that a Kissel car the defendant accepted as satisfaction of the first payment of $750 was badly out of repair, and could not be used, whereas plaintiff had falsely and fraudulently represented it to be in good condition, repair and running order; that the payment of June 1, 1921, was not made or tendered on said day; and that by reason of said false representation and said nonpayment the defendant declared the contract forfeited, and tendered back to plaintiff the car in as good condition as it was when received. Upon the issues thus stated, evidence was introduced, and the jury returned its verdict in favor of plaintiff. The appeal is from the judgment.

The answer contains the suggestion of two defenses, but defendant has stated it in such a manner as to make it difficult to determine whether reliance is upon both or one. It alleges that fraud was perpetrated upon it by plaintiff in procuring it to accept the automobile as the first payment of $750, and states that it has tendered the car back to the plaintiff in as good condition as when received. It does not state when it made this tender. The fact is it kept the car for four months after (according to its own evidence) it discovered that it was defective. The other defense disclosed is a forfeiture of the contract because of the failure to make the deferred payment of June 1st. It is well settled that these two defenses are very different. One affirms the contract as made, and asks that it be rescinded because of the fraud, and the other puts an end to the contract, and extinguishes it in pursuance to its terms, just as performance extinguishes it. *Stennick* v. *J. K. Lumber Co.,* 85 Or.

444, 161 Pac. 97, loc. cit. 107, 166 Pac. 951.   Since the case was tried as though both defenses were well pleaded, we will consider it in the double aspect.

The first assignment is that the verdict and judgment are not justified by the evidence, and are contrary to the law.   This contention is made, because, about a week after the car had been delivered to defendant and after it had been demonstrated some two or three times by salesmen, it could not be made to run on account of a leakage of water into the carburetor, caused, as stated by defendant's witnesses, by a crack in the valve chamber of the engine.

The automobile was examined by an experienced automobile man of defendant's choice before it was accepted by defendant, and when testifying this expert said he discovered nothing wrong in the engine; that he tried it out a day or two before the deal was closed; that he thereafter went to plaintiff's garage, and received the car for defendant, and drove it to his storeroom, ten or twelve blocks away, and it ran all right.   Plaintiff likewise testified that if the engine was cracked he did not know it; that it ran all right while he owned and operated it.   There was the testimony of other witnesses, both *pro* and *con* on the issues, but what we have stated shows the disputed point.   If it be granted the plaintiff did state to defendant that the car was in good condition, repair, and running order at the time it was delivered, the testimony does not show it otherwise.   The crack in the valve chamber might have developed subsequently.   The car was in the possession of defendant for about four months before it advised plaintiff of its defective condition or notified him of its intention to rescind the contract.

However, the testimony of plaintiff and defendant is not in accord as to the language plaintiff used in describing the condition of the auto when it was turned over to defendant.   The plaintiff says he

26 Ariz.—8

represented only that it was in good repair, had a new battery, and was in running order. The evidence on the disputed issues being in conflict, the verdict of the jury in favor of the plaintiff must stand. *Durazo* v. *Ayers,* 21 Ariz. 373, 188 Pac. 868; *Otero* v. *Wheeler,* 21 Ariz. 50, 185 Pac. 359; *Benton* v. *Regeser,* 20 Ariz. 273, 179 Pac. 966; *Southwest Hay & Grain Co.* v. *Sherer,* 21 Ariz. 166, 185 Pac. 820; *Kjerschow* v. *Daggs,* 24 Ariz. 207, 207 Pac. 1089.

Under this assignment defendant also contends that because the plaintiff did not pay or tender the payment of $100 due June 1st he forfeited his contract. The plaintiff testified he went to defendant's office on June 1st, and explained to its secretary and treasurer that money was close with him, and asked for an extension, and was informed by such officer that defendant would let him know later. On June 4th he tendered the $100 and interest, which tender was refused and a forfeiture declared, because he had not made payment on June 1st. It was at this time also that defendant informed plaintiff the Kissel car was no account, and that he could have it back, and that the defendant would not go through with the contract.

Although defendant's contention is that the car was in bad condition and unfit for use at the time it took possession of it, its officer in chargé on June 1st, when plaintiff went to its office and asked for an extension in which to make payment due on that date, did not tell him defendant was dissatisfied with car or that it was no account. Rather it demeaned itself so as to engender in plaintiff a false hope that his request for an extension might be granted. While the defendant on June 4th undertook to rescind the contract ostensibly, because the $100 was not paid, it is quite apparent that the real reason was not the slight delay in that regard, but

because of the bad bargain it had made in taking the car as part of the purchase price.

There is no essence clause in the contract. The only expression therein looking to a forfeiture is as follows:

"In the event the seller complies with his part of this contract, and the purchaser fails to comply with his part of this contract, the earnest money receipted for herein shall be forfeited."

There is nothing in this language to warn the purchaser that he must meet deferred payments promptly and exactly or lose all previous payments and his contract. And, besides, a $750 payment on a $1,050 purchase could hardly be called "earnest money," or money to bind the bargain. In fact the contract, which is also a receipt, shows that the $750 was not earnest-money only, but a part of the purchase price. It recites:

"Received of J. C. McGrath the sum of $750 earnest money and part purchase money. . . . "

The above forfeiture clause has reference to earnest-money only. It does not undertake to forfeit "purchase money." According to its terms, if the purchaser fails to comply with his part of the contract, the earnest-money is forfeited. It is true that his contract called for payments on June 1st, August 1st and November 1st, and we will suppose that he had made those payments, except the last one. In such case the provision for forfeiture would have no application; and, in so far as the $750 was a part of the purchase price, it has no application. As we construe this contract, there is no provision for a forfeiture of anything, except earnest-money.

Other expressions, as the one allowing the seller ninety days to make title good in case it should be found defective, and the one securing the deferred payments by the title to the property, indicate clearly

that the seller at least did not intend the contract to be forfeited, if not promptly and punctually performed according to its very letter. Its security was not in declaring the forfeiture, but in holding the title until the deferred payments had been made. We think the present contract is of the kind described by Mr. Pomeroy in his work on Equity Jurisprudence (2d ed.), section 1208, wherein he says:

"In all ordinary cases of contract for the sale of land, if there is nothing special in its objects, subject matter, or terms, although a certain period of time *is* stipulated for its completion, or for the execution of any of its terms, equity treats the provision as formal, rather than essential, and permits a party who has suffered the period to elapse to perform such acts after the prescribed date, and to compel a performance by the other party, notwithstanding his own delay."

See, also, sections 374 and 392, *supra.*

In the case of *Reid* v. *Mix,* 63 Kan. 745, 55 L. R. A. 706, 66 Pac. 1021, the rule with reference to whether a contract falls within the class in which time is of the essence or the class of ordinary contracts is discussed, and it is there said:

"Whether specific performance of a mutual contract shall or shall not be decreed, considering all the facts and circumstances of the case which go to make up its equities, rests largely in the sound discretion of the court. *Fowler* v. *Marshall,* 29 Kan. 665; Pom. Eq. Jur. (2d ed.) section 1404; 20 Enc. Pl. & Prac. 390, and cases cited. Again, where a mutual contract is equitable, and fairly entered into by the parties, and time is not expressly made of the essence of the contract, and neither party thereto has expressly, by act or deed, repudiated the binding force of the same, and one party seeks to evade its obligations on the ground of the delay of the other in tendering performance, he must show either damage resulting to himself, or such willful and intentional delay as to evince the intention of the party delaying to treat the contract at an end."

See, also, *Monihon* v. *Wakelin,* 6 Ariz. 225, 56 Pac. 735; 13 C. J. 687, § 783; Fry, Specific Performance, par. 712; *Jones* v. *Robbins,* 29 Me. 351, 50 Am. Dec. 593; *Barnard* v. *Lee,* 97 Mass. 95.

There is no reason to believe that plaintiff's delay in making the payment of June 1st in any way inconvenienced defendant, or that such delay was willful or intentional. On the contrary, it is reasonable to assume that had the defendant, when importuned for an extension of time by plaintiff, even intimated the purpose to declare a forfeiture, if the payment was not made on June 1st, there would have been no delay. We conclude that defendant has failed to establish either of its defenses.

The defendant complains of instructions given, and also of the court's refusal to instruct in these words:

"Second. That the court erred in giving instructions to the jury that were contrary to law, and were ambiguous, misleading, and prejudicial to the appellant.

"Third. That the court erred in refusing to give instructions to the jury requested by the appellant."

These assignments are not in accordance with the rules. They lack not only in substance but they do not even identify the instruction, much less the error, if any. Subdivisions 4 and 5 of Rule XII of this court are as follows:

"(4) If the assignment of error be to the giving of instructions to the jury by the lower court, the appellant must state wherein the instruction complained of is erroneous in its statement of the law applicable to the case or to any particular fact or facts thereon.

"(5) If the refusal to give an instruction asked for by the appellant in the court below be assigned as error, the assignment must state the applicability of such instruction to the fact or facts of the case."

No attempt to comply with the rules is shown. Their purpose is obvious. It was thought their ob-

servance would be an aid to the court and expedite its work. It is an easy matter to observe these rules, and when counsel fail to do so we must conclude they have little faith or interest in the questions so imperfectly and inadequately presented.

We will add, however, that we have examined the instructions as a whole, and are satisfied they are free from any prejudicial error. We cannot find where defendant asked for any instruction upon the final submission to the jury. At the close of plaintiff's case it asked for a directed verdict, which was refused. It thereupon introduced its evidence, and in doing so waived its right to insist that motion was good and should have been sustained. *Southwest Cotton Company* v. *Ryan,* 22 Ariz. 520, 199 Pac. 124; *Arizona Power Co.* v. *Hayes,* 24 Ariz. 322, 209 Pac. 280.

Whether specific performance will be compelled depends upon the facts of each individual case. If the Kissel car was in fact worthless, defendant, according to its own testimony, knew it very soon after it took possession, and whether the crack in the valve chamber was there before defendant received the car, or developed subsequently because of inherent weakness or unskillful handling, good faith required that defendant act with reasonable promptness upon its discovery to rescind the contract. Instead of doing this, the car was kept some four months thereafter without any complaint to plaintiff that it was not as represented, and even then its condition was not assigned as the reason for repudiating the contract. The harsh rule of forfeiture was invoked, which, if upheld, would entitle the defendant to retain the car as also the subject matter of the contract. The facts do not justify such a settlement of this controversy.

The judgment is affirmed.

McALISTER, C. J., and LYMAN, J., concur.