408 P.2d 42

**Frank GEE and Jane Doe Gee d/b/a El Grande Market, Appellants,**

**v.**

**Ramon SALCIDO and Aurelia Salcido, husband and wife, Appellees.***

**No. 2 CA–CIV 39.**

Court of Appeals of Arizona.

Nov. 24, 1965.

Rehearing Denied Jan. 5, 1966.
Review Denied Feb. 1, 1966.

---

* This appeal was filed with the Arizona Supreme Court and assigned that Court's

No. 7707. The matter was referred to this Court pusuant to § 12–120.23 A.R.S.

Lesher, Scruggs, Rucker, Kimble & Lindamood, by William E. Kimble, Tucson, for appellants.

Healy, Laubscher & Dickerson, by Vernon F. Dickerson, Tucson, for appellees.

KRUCKER, Chief Judge.

Aurelia Salcido and Ramon Salcido recovered a judgment for $5,280.60 against Frank and Jane Gee for personal injuries sustained by Aurelia Salcido as a result of slipping and falling while a business invitee on the premises of the Gees' grocery store, one of the El Grande Markets, in Tucson. Defendants filed timely alternative motions either to set aside the jury's verdict and enter judgment in accordance with their earlier motion for a directed verdict, or for a new trial. From the denial of them and from the verdict and the judgment the defendants have taken this appeal.

Their three assignments of error raise the single question: In submitting the case to the jury did the trial court err because the plaintiffs had failed to establish a prima facie case?

As proprietors of a store to which the plaintiff, Aurelia Salcido, had come as an invitee, the defendants owed her the duty to use reasonable or ordinary care, in accordance with the circumstances, to:

(a) not do anything that might result in injury to her;

(b) not do anything that might make her use of the premises dangerous, or, stated conversely, make and keep the premises reasonably safe;

(c) protect her against anything that threatened her with an unreasonable risk of harm and from dangers foreseeably attendant on the arrangement or use of the premises; and

(d) inspect the premises and discover possible dangerous conditions of which they did not know.

Annot., 61 A.L.R.2d 6, 12 and 13 (1958); 65 C.J.S. Negligence, § 45 (1950); 2 Harper & James, "The Law of Torts" 1487 and 1488 (1956); Prosser, "Torts" 402 (1964).

In a case such as is before us, where the plaintiff fell on the floor of a store, the court must consider the necessity of proof that the defendant-proprietor had notice of the dangerous floor condition. "Where the floor condition is one which is traceable to the proprietor's own act—that is, a condition created by him or under his authority * * * no proof of notice is necessary." Annot., 61 A.L.R.2d 6, 24 (1958). It is only where the floor condition was caused by "persons for whom the proprietor is not responsible" that "proof that the proprietor was negligent in relation to the floor condition requires a showing that he had actual notice thereof, or that the condition existed for such a length of time that, in the exercise of reasonable care, he should have known of it." Id., 26.

■■ The specific question to be determined by this Court is whether the evidence, considered in the light of the well-settled rule that an appellate court must consider the evidence most strongly in favor of sustaining the jury's verdict, was either:

(a) so substantial that from it a reasonable inference could be drawn to support the verdict, or

(b) of such character that reasonable minds might differ as to the inferences to be drawn from the facts. If it was either, the verdict and rulings of the trial court must be sustained. If it was not, the trial court erred in not granting the defendants' motion for judgment n. o. v. We believe that the trial court did not err.

The plaintiffs' proof of liability consisted of testimony by Aurelia Salcido and Robert Wilson who, at the time of the trial, was the manager of the produce department in the defendants' store and who, at the time of the accident, had been in the defendants' employ for about three and a half months. There were contradictions between the testimony of these witnesses and inconsistencies in Wilson's testimony.

Mrs. Salcido gave evidence to the effect that while on the premises of the defendants' store, at about 10 a. m. for the purpose of making an exchange and a purchase, she had slipped on a broccoli stalk and had fallen. She had not seen the broccoli stalk before slipping on it. Prior to the accident she had seen Wilson cleaning vegetables. After the accident Mrs. Salcido had been driven to her home, where she had begun to experience symptoms of illness. At about noon she had telephoned one of the defendants and had reported her accident. On cross-examination, her response to the question, "Did Mr. Gee keep a clean market?" was, "Yes, sometimes, especially when the vegetables leave, you know, sometimes very clean and sometimes it is, you know [sic.]".

Wilson's testimony was to the following effect. On the day of the accident he had begun work at the defendants' store at 9 a. m. and had spent the first hour or hour and a half preparing the rack displaying vegetables. His co-worker in the produce department was absent. Large amounts of debris fell on the floor in the course of preparing this display. It was the practice to sweep the floor immediately after the display had been completed. Preceding the accident, Wilson had swept the floor either as recently as ten minutes or as long as thirty-five minutes before. [The longer period was his answer on direct examination, the shorter one, on cross-examination by the defendants' counsel.]

Wilson recalled seeing Mrs. Salcido prior to the accident, but not just before she had fallen. But he could not recall the type of broom he had used to sweep the floor, and he was vague about whether, as Mrs. Salcido has stated, he had a grocery cart with him at the time of the accident and about the number of people who had passed through his department that morning.

The debris on which Mrs. Salcido had slipped, according to Wilson, had been a piece of lettuce about the size of a quarter dollar coin. It had left a mark on the floor as water does on a cement floor. He had not seen it before the accident, and after Mrs. Salcido had fallen, he had kicked it about six inches under the vegetable rack. He estimated the time of the accident to have been between 11 a. m. and noon.

Wilson also testified that debris fell every five minutes (depending on the number of customers in the store) and that, "it's impossible to keep all the debris off the floor unless you got one man that is constantly sweeping the produce floor". He explained also that he was under instructions and it was the common practice, in the case of debris that employees saw on the floor between sweepings, to place or kick it under the produce stand or to the side of the aisle, if there was not too much of it.

The jury could have decided that the defendants had been negligent if they believed that either:

1. the floor of the store had not been swept prior to Mrs. Salcido's fall;

2. the floor of the store should have been swept more than once prior to Mrs. Salcido's fall; or

3. the debris on which Mrs. Salcido had slipped had been a broccoli stalk.

If the floor had not been swept prior to Mrs. Salcido's fall, the defendants would have failed to have made their premises reasonably safe for Mrs. Salcido's use because large amounts of debris would have been on the floor as a result of Wilson's preparation of the vegetable display. The jury could have believed her testimony if it believed that she had telephoned one of the defendants from her home at about noon. The defendant whom she said she had spoken with by telephone was present, at least at the commencement of the trial. He did not refute Mrs. Salcido's testimony. She had decided to telephone the defendants only after she had returned home and had

begun to feel ill. It would have been difficult for her to have made the call by noon time, if the accident had happened between 11 a. m. and noon, as Wilson said it had.

The jury could have believed that Mrs. Salcido had fallen about 10 a. m. also, if it believed that Wilson had spent only about one hour in preparing the vegetable display and that not more than ten minutes had elapsed between the time he had completed sweeping and the time Mrs. Salcido had fallen. Assuming the accuracy of these time periods, the time of the accident could have been estimated by adding to the hour 10:10 a. m., an estimate of the time required for sweeping.

If the jury believed that the time of Mrs. Salcido's fall had been near 10 a. m., rather than between 11 a. m. and noon, and also believed that Wilson had taken an hour and a half to complete the vegetable display, it could have believed that Wilson had not had time to sweep the floor prior to Mrs. Salcido's fall. Mrs. Salcido, of course, testified that prior to her fall Wilson had been cleaning the vegetables.

Wilson testified that he had swept the floor not more than ten minutes before Mrs. Salcido had fallen. His testimony indicated also that the interval may have been as long as thirty-five minutes. The jury could have believed that he had completed sweeping before 10:30 a. m. and that Mrs. Salcido had fallen any time up to noon—thus lengthening the interval to almost one and a half hours. If, as Wilson said, debris could fall every five minutes, and because Wilson was indefinite about the number of customers who might have passed through the produce department prior to Mrs. Salcido's fall, the jury could have assumed that enough debris had accumulated to have required another sweeping. Mrs. Salcido answered a question as to whether the defendants' store was clean by saying, "sometimes" and adding "especially when the vegetables leave", which the jury could have believed meant that when vegetables were in season the store was not always clean. The jury could also have been influenced by

**284**

Wilson's statement that it was impossible to have kept the floor clean unless someone swept it constantly.

If the jury believed that the debris on which Mrs. Salcido had slipped had been a broccoli stalk, it could have believed that it had been dropped on the floor by Wilson because it is not the kind of debris that results from handling by customers. A quarter dollar coin size piece of lettuce out of which sufficient moisture had been squeezed by a footstep to have left a wet mark on the floor is not likely to be rigid enough to be kicked from the aisle to a position six inches under a stand. A broccoli stalk, on the other hand, might have been removed in that way.

The jury also could have believed that the fact that of the two employees assigned to the produce department in the defendants' store Wilson was the only one present on the day of the accident indicated the possibility that Wilson had been compelled or had chosen to deviate from or omit some of the usual work procedures and/or accident prevention precautions. There was no testimony as to the nature of Wilson's skill in the work he had been asigned to nor his job classification at the time of the accident.

The foregoing analysis of the evidence indicates that, by following any one of several alternate lines of reasoning, the jury could have found the defendants to have been negligent. The trial court, therefore, properly denied the motions made by the defendants at the end of the trial. Its judgment in favor of the plaintiffs, therefore, is affirmed.

HATHAWAY, J., and JOHN P. COLLINS, Superior Court Judge, concurring.

NOTE: Judge JOHN F. MOLLOY, having requested that he be relieved from consideration of this matter, Judge JOHN P. COLLINS was called to sit in his stead and participate in the determination of this decision.