466 P.2d 56

Delmar MOORE, by his Guardian ad Litem, Viola Goodmon, Appellant,

v.

MARICOPA COUNTY, Arizona, a political sub-division, and the City of Tolleson, Arizona, a municipal corporation, Joe Camacho and John Doe, Appellees.

No. I CA–CIV 922.

Court of Appeals of Arizona, Division 1, Department B.

March 12, 1970.

Rehearing Denied April 7, 1970.

Review Denied April 28, 1970.

Mackenzie, Bolze & Hirsch, by Albert H. Mackenzie, Wilson, McConnell & Moroney, by William T. Moroney, Phoenix, for appellant.

Moore, Romley, Kaplan, Robbins & Green, by Craig R. Kepner, Phoenix, for appellees City of Tolleson and Joe Camacho.

O'Connor, Cavanagh, Anderson, Westover, Killingsworth & Beshears, by Ralph E. Mahowald, Jr., Phoenix, for appellee Maricopa County.

EUBANK, Presiding Judge.

The issue before us is whether summary judgments were properly granted to each of the defendant-appellees in the plaintiff-appellant's suit for personal injuries.

On July 2, 1965, the plaintiff Delmar Moore was arrested by a Maricopa County Deputy Sheriff near but not within the City of Tolleson, and charged with four statutory misdemeanors involving drinking and/or driving. On July 3, 1965, plaintiff was taken before Vernon Sessions, Justice of the Peace for the Tolleson Precinct of Maricopa County, who also occupied the office of City Magistrate of the City of Tolleson. Plaintiff entered pleas of guilty to all four charges, and was sentenced by Justice (as he was then acting) Sessions to pay a total fine of $400 or serve a sentence of 60 days in jail. Plaintiff was

sentenced to serve his 60-day sentence in the Tolleson jail[1] when he did not pay the indicated fine. There is no suggestion by plaintiff here that this was not a lawful place of confinement.

In the Tolleson jail the plaintiff had the opportunity of accelerating service of his sentence by participating in a voluntary work program, under which he could serve his sentence "two-for-one", meaning that each day worked counted for two days on the 60-day sentence. See A.R.S. Section 31–144. Plaintiff elected—or at least did not refuse—to participate, and after working briefly on one or two other municipal projects, commenced working as a collector for the City of Tolleson's municipal garbage collection service.

The City's single garbage truck was driven by Joe Camacho, a municipal employee. The receptacle portion of the truck was equipped with a blade which worked on a cycle, the operating part of which consisted of a vertical descent to a line about an inch from the rear of the truck, and then a horizontal "scooping" of the garbage from the platform at the end of the truck (the entrance to the receptacle) inward into the receptacle, where it was thereafter compressed by mechanical means. This blade could be activated either by a person operating a switch at the rear of the truck or by the driver using a switch located in the driver's cab.

Plaintiff's specific duties on the garbage detail consisted of picking up the residents' garbage containers, emptying them at the rear of the truck, returning the container, and then boarding the rear of the truck and riding it to the next stop. Usually one, two, or three other fellow prisoners would go along and perform the same duties. Plaintiff testified that he learned what was expected of him by watching these fellow prisoners. According to plaintiff, neither Joe Camacho nor anyone else in behalf of the City had ever indicated that any set routine was to be followed, or that there were any safety precautions that were to be observed. The record leaves open to doubt whether there was any kind of express or commonly shared tacit understanding as to just when or how often or under what particular circumstances the blade would be activated, or whether at any particular time it would be activated by the driver Camacho or by one of the men at the back of the truck. The record indicates that the truck was equipped with a door over the rear of the receptacle which could be closed prior to operating the blade but which was not closed at the time of the accident.

Plaintiff was 18 years old in July of 1965. On the afternoon of July 27, 1965, at which time plaintiff had worked on the garbage collection detail a few days, the truck made a stop and plaintiff picked up a can or barrel container from a residence in Tolleson. Plaintiff emptied the container onto the platform at the rear of the receptacle. Plaintiff described the container as "awful heavy." With the container about head-high, plaintiff turned and started away from the rear of the truck to return the container. He could not at that point see the blade. At this time, Joe Camacho was sitting in the cab of the truck and was observing plaintiff and two other men at or near the rear of the truck in a rear-view mirror on one side of the cab. Camacho testified in his deposition that he saw plaintiff with the container on his shoulder, but he was not certain whether it was full or empty. Plaintiff at that time was at or near the rear corner of the truck. Camacho indicated that he thought that the other two men were waiting for the blade to be activated and the platform swept clear of refuse. Immediately thereafter, the blade was activated, but although plaintiff's testimony is very clearly to the effect that it must have been turned on by

1. Justice Sessions stated in a deposition that he always offered county prisoners the choice of serving a sentence in the Maricopa County Jail, in Phoenix, or in the Tolleson County-City Jail, in Tolleson, although he did not specifically recall stating such an option to plaintiff.

Camacho, inside the cab, Camacho testified that he did not know of his own personal knowledge who threw the switch that turned the blade on. At nearly the same moment plaintiff, for some unknown reason, lost his balance while lowering the empty container. He instinctively reached out with his left hand for support. The only support available was the rear of the truck, and plaintiff's hand apparently reached it at about the time the blade completed its descent to the platform, catching plaintiff's hand and allegedly causing permanent injury.

The record reveals that although Maricopa County contributed some financial support to the maintenance of the Tolleson County-City Jail, it did not exercise any control over its administration, or over the activities of its inmates. The record indicates that the City of Tolleson alone benefited from the jail work programs, and that they were administered solely by City of Tolleson personnel. While plaintiff asserts in effect that the Justice of the Peace knew in his "County" capacity that working on the garbage truck was a hazardous activity, we find no evidence in that regard, or indeed any evidence that the Justice concerned himself with the activities of the various prisoners he sentenced. He was certainly under no legal obligation to do so. We do not express an opinion on whether or not workmen's compensation is available under the circumstances of this case. *But see* Watson v. Industrial Commission, 100 Ariz. 327, 414 P.2d 144 (1966); Johnson v. Industrial Commission, 88 Ariz. 354, 356 P.2d 1021 (1960).

■■ Under Rule 56(c), Rules of Civil Procedure, 16 A.R.S., summary judgment must be entered if there is no genuine issue as to any material fact and the facts show that the moving party is entitled to judgment *as a matter of law*. Here, there is no dispute as to the known facts. Therefore, the question becomes, upon the undisputed facts, could the trial court say that the defendant-city and its employees were entitled to judgment as a matter of

law? Ordinarily, in a negligence action, the jury determines whether or not a given state of facts constitutes negligence. Vigil v. Herman, 102 Ariz. 31, 424 P.2d 159 (1967); Casey v. Beaudry Motor Co., 83 Ariz. 6, 315 P.2d 662 (1957); 2 Restatement of Torts 2nd, Sec. 434 (1965). A corollary of this rule is that the absence of negligence can be decided by the court as a matter of law only if the court can say that twelve reasonable men could come to no other conclusion. Scott v. Scott, 75 Ariz. 116, 252 P.2d 571 (1953); Arizona Power Co. v. Hayes, 24 Ariz. 322, 209 P. 280 (1922); Prosser, Torts, Sec. 39, p. 191 (2nd Ed.1955). Considering the facts set forth in this opinion which were presented to the trial court in connection with the motion for summary judgment, we believe that twelve reasonable men might well differ as to whether or not the defendant-city and its employee were negligent. Therefore, we conclude that the defendant-city and its employee were not entitled to judgment as a matter of law, and for that reason summary judgment should not have been entered in their favor. This is not to say that summary judgment is never appropriate where the issue of negligent conduct is involved. *See* our recent decision in Compton v. National Metals Co., 10 Ariz.App. 366, 459 P.2d 93 (1969), and also *see* Harmon v. Szrama, 102 Ariz. 343, 429 P.2d 662 (1967). Under the facts in this case involving a moving or dynamic, rather than a static situation, as stated above, we are of the opinion that reasonable men might well differ on the issue of negligence, and thus this issue must be submitted to the trier of fact.

■■ The trial court's rationale is indicated in its statement that "the accident was caused by the plaintiff losing his balance as he was setting down an empty garbage can." However, the plaintiff has charged, inter alia, that the defendant-city and Joe Camacho negligently failed to either "instruct, watch or supervise" him in the garbage detail operation. True it is that the plaintiff, by his own statement,

lost his balance and instinctively grabbed for the truck, and that without such act the injury could not have occurred. But we do not think that this circumstance necessarily relieves the truck driver and the City of liability for causal negligence. An injury may have more than one proximate cause, if both or all are efficient injury-producing causes without which the injury would not have been sustained. McDowell v. Davis, 104 Ariz. 69, 448 P.2d 869 (1968); Brand v. J. H. Rose Trucking Co., 102 Ariz. 201, 205, 427 P.2d 519, 523 (1967). "Negligence is based on foreseeability," Boozer v. Arizona Country Club, 102 Ariz. 544, 547, 434 P.2d 630, 633 (1967), and certainly it is not beyond the realm of the foreseeable to imagine that a man very close to the rear of a truck manipulating an "awful heavy" garbage container might lose his balance and come in contact with the truck and the blade if operating. Conceivably, at least, a trier of fact might conclude that some system of rules or some understanding as to procedure, however rudimentary, should have been adopted and practiced with respect to logistics and signals in relation to the time of operating the blade, and that a reasonable man would have done so. Here, also, the critical matter of just how the blade came to be turned on is in doubt. Under all of the circumstances, in this moving situation where split seconds, precise distances, and even expressions on faces may be important, we think that insofar as the City and Joe Camacho are concerned, the usual issues in a negligence case should be presented at a plenary trial.

On the other hand, we see no basis for imposing liability on Maricopa County. That Maricopa County had some unexercised right of control over the administration of the Tolleson jail does not mean that it would have a right to control the *modus operandi* of a voluntary work program administered solely by and for the City of Tolleson. It is the *modus operandi* of the garbage collection detail of which plaintiff complains, not the existence of the voluntary work program itself, and we find no evidence that any hazard of which plaintiff complains came to the notice of an appropriate county authority. While counsel for plaintiff argues that the County and its Justice should not be permitted to "pull a Pontius Pilate" and wash their hands of prisoners after sentencing, apart from this reference to the New Testament (Matthew 27:24), no authority is cited which would support a holding of liability on the part of the County.

The judgment in favor of Maricopa County is affirmed. The judgment in favor of the City of Tolleson and Joe Camacho is reversed, and the cause remanded for further proceedings.

HAIRE and JACOBSON, JJ., concur.