636 P.2d 1229

**Harry BLOOM and Jean Bloom, Plaintiffs-Appellants,**

v.

**FRY'S FOOD STORES, INC., Defendant-Appellee.**

No. 1 CA–CIV 5064.

Court of Appeals of Arizona, Division 1, Department B.

Sept. 1, 1981.

Rehearing Denied Sept. 29, 1981.

Review Denied Nov. 3, 1981.

Jennings, Kepner & Haug by Robert A. Scheffing, John C. Rea, Carolyn Kaluzniacki, Phoenix, for plaintiffs-appellants.

Benjamin C. Thomas and O'Connor, Cavanagh, Anderson, Westover, Killingsworth & Beshears, P. A. by Larry L. Smith, Phoenix, for defendant-appellee.

## OPINION

O'CONNOR, Judge.

The plaintiff-appellant, Harry Bloom, slipped and fell in one of the appellee's self-service supermarkets. Appellant alleged that he slipped on a grape and that appellee was negligent in stacking bunches of grapes loosely in a display bin. After the parties engaged in discovery, appellee moved for summary judgment, contending that appellant had failed to show that it had the requisite actual or constructive notice of a dangerous condition. The trial court granted appellee's motion. We reverse.

In reviewing a summary judgment, we must view the facts and the record in the light most favorable to the party opposing the motion. *Anderson v. Mobile Discount Corp.*, 122 Ariz. 411, 595 P.2d 203 (App. 1979). Summary judgment is proper only if the record, and all reasonable inferences to be drawn therefrom, disclose no genuine issue of material fact. *Ferree v. City of Yuma*, 124 Ariz. 225, 603 P.2d 117 (App. 1979).

The accident occurred on October 6, 1978 at appellee's store located at the intersection of 51st Avenue and Indian School Road in the City of Phoenix. The store opens each morning at 8:00 A.M. Appellant, Bloom, testified in deposition that he arrived at the store at about 8:40 A.M., and went to the produce department. Bunches of grapes were stacked loose in a display bin or case, adjacent to the aisle. Bloom said his impression was that the grapes were stacked "sky-high." He testified that the pile of grapes were at least two feet high, and could have been as high as two and one-half or three feet. The store manager testified that there was a small "lip" of a "couple of inches" around the case.

Bloom walked a few feet past the grape display bin, picked up several tomatoes, and placed them on a scale. Bloom testified that the scale was three or four feet away from the grape display. When Bloom stepped back to see the scale, he slipped and fell. He testified that he slipped on a grape. After his fall, Bloom noticed several grapes on the floor beside him, some squashed. No one testified as to how the grapes came to be on the floor near the scales or how long they had been there.

Robert Covelli was the produce manager at the store. He customarily arrived at work at 3:00 A.M. and took his lunch break

at 8:00 A.M. Covelli mopped the floor just prior to 8:00 A.M. He recalled from his inspection just before he took his lunch break that the floor was clean and clear at that time. Covelli was not in the store between 8:00 A.M. and the time the accident occurred just after 8:40 A.M.

The work schedule at the supermarket was arranged so that only one employee besides the produce manager worked in the produce section at a time. Between 8:00 A.M. and 8:40 A.M., a produce clerk was on duty, but he was in the receiving area at the back of the store, getting produce ready for shelving. No Fry's employee was in or near the produce section itself at the time of the accident.

Covelli acknowledged that the produce section was one of the "more dangerous" aisles in the store. There was no set sweeping schedule for either the produce section or the store generally. Employees were instructed to pick up anything they saw on the floor and to sweep when necessary. There was no evidence that the floor of the produce section had been swept after the store opened at 8:00 o'clock up to the time of the accident, nor was there any significant evidence as to customer traffic or activities in the produce department on this particular morning.

Appellee's motion for summary judgment was based upon the premise that there was no evidence that the activities of Fry's employees caused the grapes to be on the floor, no evidence that any of Fry's employees knew that the grapes were on the floor, and no evidence as to how long the grapes had been on the floor. Appellants contended, on the other hand, that notice of the possibility of hazard was inherent in appellee's method of operation. Appellants also specifically alleged that the grapes were negligently displayed. Appellants outlined the facts supporting this allegation of negligence as follows:

Grapes were loosely packed, highly stacked and next to the edge of the counter where they could easily fall when being looked at by customers. Most stores now use grape cartons, and did at

the time of the accident, which protect the grapes from becoming loose and falling to the floor.

It is clear that a store owner is not an insurer of the safety of his patrons. *Moore v. Southwestern Sash & Door Co.*, 71 Ariz. 418, 228 P.2d 993 (1951). He owes to his invitees only the duty to exercise reasonable care for their safety. *McGuire v. Valley National Bank of Phoenix*, 94 Ariz. 50, 381 P.2d 588 (1963); *Walker v. Montgomery Ward & Co., Inc.*, 20 Ariz.App. 255, 511 P.2d 699 (1973). Knowledge in turn is the key to exercising reasonable care. As stated in an annotation entitled "Store or Business Premises Slip-and-Fall: Modern Status or Rules Requiring Showing of Notice of Proprietor of Transitory Interior Condition Allegedly Causing Plaintiff's Fall", at 85 A.L.R.3d 1,000, 1003 (1978):

The foundation of liability for negligence is knowledge—or opportunity by the exercise of reasonable diligence to acquire knowledge—of the peril which subsequently results in injury. A person cannot be held responsible on the theory of negligence for an injury from an act or omission on his part unless it appears that the person had knowledge, or reasonably was chargeable with knowledge, that the act or omission involved danger to another. In other words, negligence presupposes a duty of care, and this duty in turn presupposes knowledge or its equivalent.

The development of the modern self-service supermarket has to some extent altered the application of these principles. A patron sustaining injuries from a slip and fall is rarely in a position to prove actual or even constructive notice. Against this background, a body of case law has developed which relieves the plaintiff of the initial burden of proving notice in cases where the occurrence of a transitory hazardous condition can reasonably be anticipated from the store owner's method of doing business. One of the earliest of these cases was *Bozza v. Vornado, Inc.*, 42 N.J. 355, 200 A.2d 777 (1964), which involved a fall in a store cafeteria. The *Bozza* court stated:

As we view the over-all problem, notice is merely one factor for determining whether the defendant has breached his duty of due care. As stated in *Bridgman v. Safeway Stores, Inc.*, 53 Cal.2d 443, 2 Cal.Rptr. 146, 148, 348 P.2d 696, 698 (Sup. Ct.1960):

"The requirement of actual or constructive knowledge is *merely a means* of applying the general rule * * * that the proprietor may be liable if he knew or by the exercise of reasonable care could have discovered the dangerous condition, and it does not alter the basic duty to use ordinary care under all the circumstances." (Emphasis added)

Thus, we believe that when plaintiff has shown that the circumstances were such as to create the reasonable probability that the dangerous condition would occur, he need not also prove actual or constructive notice of the specific condition. Factors bearing on the existence of such reasonable probability would include the nature of the business, the general condition of the premises, a pattern of conduct or recurring incidents, *Mahoney v. J. C. Penney Co.*, 71 N.M. 244, 377 P.2d 663, (Sup. Ct.1962). To relieve the plaintiff of the requirement of proving actual or constructive notice in such instances is to effect a more equitable balance in regard to the burdens of proof.

*Id.* at 359–60, 200 A.2d at 780. *See also, Jasko v. F. W. Woolworth Co.*, 177 Colo. 418, 494 P.2d 839 (1972); *Wollerman v. Grand Union Stores, Inc.*, 47 N.J. 426, 221 A.2d 513 (1966); *Ciminski v. Finn Corp.*, 13 Wash.App. 815, 537 P.2d 850, 85 A.L.R.3d 991 (1975); *cf. F. W. Woolworth Co. v. Stokes*, 191 So.2d 411 (Miss.1966); *Forcier v. Grand Union Stores, Inc.*, 128 Vt. 389, 264 A.2d 796 (1970); and *Buttrey Food Stores Division v. Coulson*, 620 P.2d 549 (Wyo. 1980).

In Arizona, Division Two of this court held in *Rhodes v. El Rancho Markets*, 4 Ariz.App. 183, 418 P.2d 613 (1966), that the plaintiff who had slipped on some wet lettuce in the produce department of a supermarket made out a submissible case even though there was no evidence as to how or when the specific piece of lettuce (or the moisture) had come to be on the floor. After quoting extensively from *Wollerman v. Grand Union Stores, supra*, the court in *Rhodes* stated:

We take judicial notice of the fact that in a self-service market operation, such as appellee's, the customer is expected to handle and examine the produce displayed in the open bins. For instance, one may remove a head of lettuce from its stand, examine it, decide against it and put it back, and then repeat this process several times.

When produce is displayed and handled in such fashion, the storekeeper must take reasonable protective measures for the benefit of customers who might slip and fall on vegetable matter dropped on the floor by employees or other customers. The finder of fact could reasonably conclude that such hazard to business invitees constituted a risk of harm within the reasonable foresight of the appellee; therefore it should have taken reasonable steps to obviate the danger. In other words, the storekeeper's vigilance must be commensurate with the risk. *Wollerman v. Grand Union Stores, Inc., supra.*

*Id.*, 4 Ariz.App. at 185, 418 P.2d at 615. *See also, Gee v. Salcido*, 2 Ariz.App. 280, 408 P.2d 42 (1966).

This emerging rule which in effect requires storekeepers to anticipate spillages which are likely to result from the acts of patrons was carried forward by Division Two of this court in its recent decision in *Tom v. S. S. Kresge Co., Inc.*, 130 Ariz. 30, 633 P.2d 439 (Ariz.App.1981). In *Tom*, the plaintiff was injured when she slipped on a clear liquid substance in an aisle of the store and fell. It was established that the defendant sold soft drinks in cups from which customers could drink from while they did their shopping in the store. The store manager's written report surmised that the clear liquid was probably a spilled soft drink. Although there is no proof as to actual or constructive notice, the court of appeals reversed a summary judgment in favor of the defendant and remanded the

cause for trial. In doing so it distinguished the case of *Berne v. Greyhound Parks of Arizona, Inc.*, 104 Ariz. 38, 448 P.2d 388 (1968), which is cited by appellee, on the basis that the particular dangerous condition involved there was not the necessary result of the defendant's mode of operation.

Appellee argues that we should reject the *Rhodes* and *Wollerman* cases because customers are not "agents" of the storekeeper for whose acts the storekeeper should be responsible. Liability in the *Rhodes* and *Wollerman* cases is predicated, however, not upon any agency theory, but upon the likelihood that certain hazardous conditions will recur as a result of the particular method of doing business. Appellee also argues, in effect, that the plaintiff "assumed the risk" of injury when he patronized a retail enterprise with relatively few employees, so that prices could be minimized. No authority, however, is cited for the proposition that these circumstances alter the customary standard of liability to a business invitee. Appellees' arguments appear to be directed in the final analysis to what was reasonable care under the circumstances and to the defenses of contributory negligence or assumption of risk, all of which are matters for jury determination.

Questions in regard to burden of proof, as such, are not before us. Nor is it necessary for us in this case to extensively analyze all of the reasoning of our sister court in *Rhodes* and *Tom*. Taking appellant's version of the facts as true, there was a probability, or at least very substantial possibility, that some grapes would fall or be dropped to the floor during the course of the business day. In a closely analogous case decided by the United States Court of Appeals for the Fourth Circuit, *Thomason v. Great Atlantic and Pacific Tea Co.*, 413 F.2d 51 (1969), applying Virginia law, the court reversed a summary judgment in favor of the storekeeper notwithstanding a lack of proof of notice of the specific hazard. The court stated:

> [W]e do not find that the Supreme Court of Appeals of Virginia has foreclosed an action where culpability for the

mishap lies in the method of dispensing the merchant's wares.

> If it is reasonably foreseeable that a dangerous condition is created by, or may arise from, the means used to exhibit commodities for sale, and a patron is harmed as a consequence, we think the Virginia law demands reimbursement of the victim. Truth is, this thesis does not deviate from the concept of liability dependent upon notice. In the method-theory the storeowner is definitely informed of the threat of peril, for he instituted or adopted the manner of offering or delivering the merchandise. Justice and justification for this gravamen of suit are seen in the saving of the sufferer from the illogical exaction that he specify when, if otherwise fairly chargeable to the vendor, the particular lettuce leaf, or grape as here, or other blamable article, reached the place of the fall.

> On this postulate, circumstances disclosed in the motion papers framed a triable tort issue for judge or jury. Defendant, a grocer, no longer waits on its buyer but puts the vegetables, fruits and other staples before him to select and take with him what he wishes. As an invitee, he is to be assured a reasonably safe place to pursue the invitation. This obligation plainly requires the shopkeeper to use requisite care in maintaining its scheme of merchandizing, to see that the shopper is not subjected to undue risks.

> Default in that requirement is now charged to the company. The allegation is that grapes were made accessible to the customer in loose bunches—at least not packaged—and when fingered by the trade, children especially, could and did drop to the floor to cause slick spots in the corridor surface along the counter. Specifically, the failure to bag the grapes in netting is named as one of the dealer's neglects. A consequence, pleads the appellant, was that she stepped upon a grape and tumbled.

> Without intimating a judgment on the outcome, our opinion is that, subject to all appropriate defenses, in taxing the com-

pany with dereliction in vending its grapes, appellant made a case for trial. *Id.* at 52–53.

 We reach the same conclusion here. We can affirm a summary judgment in a negligence case only if we can say that reasonable trial jurors would have to agree that there was no breach of the duty to exercise due care. *Moore v. Maricopa County*, 11 Ariz.App. 505, 466 P.2d 56 (1970). The present record precludes any such determination.

The judgment of the superior court is reversed, and the cause is remanded for further proceedings consistent herewith.

HAIRE, P. J., and JACOBSON, J., concur.